**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

**PRO SE PRISONER CIVIL RIGHTS COMPLAINT**

WARNING ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CASE NO. _____

PLAINTIFF(S) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ina Alston

_____

_____

_____

_____

2012 JAN 31  P 2:38
U.S. DISTRICT COURT
BRIDGEPORT, CONN

FILED

VS.

DEFENDANT(S) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Theresa Lantz, Former
Commissioner of The Dep't
of Corrections For The State
of Connecticut
24 Wolcott Hill Road
Wethersfield CT 06109

Rev. 10/14/09

**Complete every section and SIGN THE LAST PAGE. The Court cannot give you legal advice. So, if you need help, you should call Inmate Legal Assistance at 1-800-301-ILAP (4527). It is a good idea to ask ILAP to review your complaint before you send it to the Court to make sure that your allegations describe the kind of claim that you can make in federal court and minimize the risk that your case will be dismissed for failure to state a proper legal claim.**

## A. JURISDICTION



I can bring my complaint in federal court because I am suing:

1. __✓__ State, county or city employees for violating my federal rights under 42 U.S.C. Sec. 1983; OR

2. ______ Federal employees for violating my federal rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and 28 U.S.C. Sec. 1331.

## B. PLAINTIFF(S) (THE PERSON(S) FILING THIS COMPLAINT)

1. First Plaintiff
   a. Full Name: Ira Alston
   b. Inmate Number: 275666
   c. Correctional facility: Northern Corr. Inst.
   d. State of citizenship: Connecticut

2. Second Plaintiff
   a. Full Name:
   b. Inmate Number:
   c. Correctional facility:
   d. State of citizenship:

**C.   DEFENDANT(S)** (THE PERSON(S) WHOSE ACTIONS YOU ARE COMPLAINING ABOUT)

If you are suing more than six people, attach additional pages. Provide items 1, 2, and 3 for each additional defendant.

1.   First Defendant

   a.   Full Name: There sa LANTZ

   b.   Rank or Title: Commissioner

   c.   Workplace: Dep't of Corrections Central Office

2.   Second Defendant

   a.   Full Name: Leo Arnone,

   b.   Rank or Title: Commissioner

   c.   Workplace: Dep't of Corrections - Central Office

3.   Third Defendant

   a.   Full Name: Michael P. Lajoie

   b.   Rank or Title: District Administrator

   c.   Workplace: Dep't of Corrections 14 District Office

4.   Fourth Defendant

   a.   Full Name: Angel Quiros

   b.   Rank or Title: Unit Administrator

   c.   Workplace: Northern Correctional Institution

5.   Fifth Defendant

   a.   Full Name: Steven Faucher

   b.   Rank or Title: Deputy Warden

   c.   Workplace: Northern Correctional Institution

6.   Sixth Defendant

   a.   Full Name: Dennis Oglesby

   b.   Rank or Title: Shift Commander / Captain

   c.   Workplace: Northern Correctional institution
                              - See Pages Attached -

Rev. 10/14/09

## D.   PREVIOUS LAWSUITS RELATED TO THIS CASE

~~Tell the court about any previous lawsuits involving the same facts involved in this action or otherwise relating to your imprisonment. If there are more than three lawsuits involving the same defendants or events in this action use the space at the end of this additional sheet of paper, provide items c-d for each complaint~~

1.   First Lawsuit

   a.   Court and Date filed: Connecticut District Court; Aug. 2003

   b.   Caption and Docket No.: Alston V. Charette, et. Al.

   c.   Briefly, what was this lawsuit about? Oxcessive Use of Force, Inadequate medical care, Deliberate indifference To Safety And Security, Assault And Battery.

   d.   Did you win or lose?  If you lost, did you appeal? If you appealed, what did the appeals court say? Settlement Agreement.

2.   Second Lawsuit

   a.   Court and Date filed: Connecticut District Court; Mar. 2007

   b.   Caption and Docket No.: Alston V. Cahill, et. Al. 3:07cv473(RNC)

   c.   Briefly, what was this lawsuit about? excessive Use of force, Inadequate medical care, deliberate indifference to Safety And Security, deliberate indifference To A Serious medical need, Assault And Battery, Retaliation, unlawful placement in Administrative Segregation, 3 Cruelty to person

   d.   Did you win or lose?  If you lost, did you appeal? If you appealed, what did the appeals court say? Pending

3.   Third Lawsuit

   a.   Court and Date filed: Connecticut District court

   b.   Caption and Docket No.: Alston V. Butkiewicus, et. Al. 3:09cv 2017(CSH)

   c.   Briefly, what was this lawsuit about? excessive Use of force Unconstitutional conditions of confinement, deliberate indifference To Safety And Security, deliberate indifference to Serious medical need, Assault And Battery etc.

   d.   Did you win or lose?  If you lost, did you appeal? If you appealed, what did the appeals court say? Pending

4

## E.   OTHER LAWSUITS

Tell the Court if any plaintiff has filed other federal lawsuits in this court within the past ten (10) years. If you need more space, attach additional pages. Provide items a-d for each case.

1.   ~~First~~ *fourth* Lawsuit

    a.   Court and Date filed: *Connecticut District Court*

    b.   Caption and Docket No.: *Alston V. Pafumi, et. Al. 3:09cv1978(CSH)*

    c.   Briefly, what was this lawsuit about? *Conspiracy, Retaliation, Unconstitutional Conditions of Confinement Deliberate indifference To Safety And Security, Denial of Adequate medical care, Assault And Battery, cruelty To Persons.*

    d.   Did you win or lose?  If you lost, did you appeal? If you appealed, what did the appeals court say? *Pending*

2.   Second Lawsuit

    a.   Court and Date filed:

    b.   Caption and Docket No.:

    c.   Briefly, what was this lawsuit about?

    d.   Did you win or lose?  If you lost, did you appeal? If you appealed, what did the appeals court say?

3.   Third Lawsuit

    a.   Court and Date filed:

    b.   Caption and Docket No.:

    c.   Briefly, what was this lawsuit about?

    d.   Did you win or lose?  If you lost, did you appeal? If you appealed, what did the appeals court say?

Now describe your claims

Statement of Case

1. See Attached pages.

2.

3.

4.

5.

6.

7.

8.

9.

10.

Rev. 10/14/09

United States District Court
District of Connecticut

IRA Alston
Plaintiff

V.

Jury trial Demanded
Amount demanded: 2.2 million
Dollars.

Theresa Lantz
Leo Arnone
Angel Quiros
Steven Faucher
Michael P. Lajoie
Darryl Little
Denis Oglesby
Second Shift Commander Captain John Doe
Third Shift Commander Captain John Doe
First Shift Commander designee Lieutenant John Doe
Second Shift Commander designee Lieutenant John Doe
Third Shift Commander designee Lieutenant John Doe
Lieutenant Michael Pafumi
Lieutenant Bellerose
Lieutenant Germond
Lieutenant Ramos
Lieutenant Melvin Saylor
Lieutenant John Doe #1
Lieutenant John Doe #2

1.

David Roston
First Shift Kitchen Supervisor, John/Jane Doe
Second Shift Kitchen Supervisor, John/Jane Doe
Correctional Officer Santiago
Correctional Officer Matthew Prior
Correctional Officer Kidd
Correctional Officer Pagan
Correctional Officer Creboter
Correctional Officer Hartley
Correctional Officer Josefiak
Correctional Officer John/Jane Doe #1
Correctional Officer John Doe #2
Correctional Officer John Doe #3
Correctional Officer John Doe #4
Health Service Administrator, Furey
Correctional Nurse Shannon Lawrence
Correctional Nurse Barbara Savoie
Correctional Nurse Nigel Rodney
Correctional Nurse Sarah Potter
Correctional Nurse Lashawn Cartwright
Defendants.

42 U.S.C. Section 1983 Civil
Rights Complaint.

o

2.

## Introduction

1. The plaintiff, Ira Alston, brings this civil rights Action pursuant to 42 U.S.C. Sec. 1983 and 1988 for Monetary damages and for other relief as well as Attorney fees against thirty-nine State of Connecticut Department of Corrections "CTDOC" employees "Defendants" Assigned to the Northern Correctional Institution "NCI" at 287 Bilton Rd Somers, CT 06071. The plaintiff, Alleges that from April 23, 2010, to April 26, 2010, three (3) Consecutive days each of the defendants whether Retaliatory or not jointly and/or severally directly or "tactically" Authorized, participated, condoned, permitted and/or conspired to Subject the plaintiff to torture, Corporal punishment and/or cruel and Unusual punishment when the defendants placed the plaintiff in Manacle Restraints where the plaintiff Arms and legs were bound together by Metal handcuffs, Leg irons and a tether chain wrapped around the handcuffs in three to four Universals and pad locked to the leg irons to Leave the plaintiff bent at the waist

o

3.

## Jurisdiction

2. This court have original Jurisdiction pursuant to the First, eighth and fourteenth Amendments to the United States Constitution 42 U.S.C. §§ 1983 And 1988, And The Constitution Laws And Statutes of the State of Connecticut And 28 U.S.C §§ 1331 and 1343(a)(3)

3. This court have Jurisdiction over Plaintiff request for injunctive relief pursuant to 28 U.S.C. §§ 2201 And 2202

## Parties

4. Plaintiff, Ira Alston, is/was at all times relevant a citizen of the United States, committed to the custody of the Commissioner for the Connecticut Department of Corrections.

5. Defendant Theresa Lantz was at the times relevant to this Complaint a State of Connecticut Department of corrections employee with the rank of commissioner. She is being sued in her individual capacity for monetary damages

4.

6. Defendant Leo Arnone is/was at all times relevant to this complaint. The Commissioner of the Department of Corrections for the State of Connecticut. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

7. Defendant Angel Quiros was at all times relevant to this complaint. The Unit Administrator / Warden of the Northern Correctional Institution "NCI". He is being sued in his individual capacity for monetary damages and his official capacity for declaratory relief.

8. Defendant Steven Faucher was at all times relevant to this complaint. A State of Connecticut Department of Corrections employee assigned to NCI with the rank of Deputy Warden. He is being sued in his individual capacity for monetary damages and his official capacity for declaratory relief.

9. Defendant Michael P. Lajoie is/was at all times relevant to this complaint. A State of Connecticut Department of Corrections CTDOC employee with the rank of District

5.

Administrator. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief

10. Defendant Darryl Little was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of Unit manager/captain of the 1 west housing unit. He is being sued in his individual capacity for monetary damages and in his official capacity for declaratory relief.

11. Defendant Dennis Oglesby was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of first shift commander/captain. He is being sued in his individual capacity for monetary relief and in his official capacity for declaratory relief.

12 Defendant John Doe is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of second shift commander/captain. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief

13. Defendant John Doe is/was at all times relevant to this complaint a CTDOC emplee assigned to NCI with the rank of Third Shift Commander / Captain. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

14. Defendant John Doe is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of First Shift Commander designee / Lieutenant. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

15. Defendant John Doe is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of Second Shift Commander designee / Lieutenant. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

16. Defendant John Doe is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of Third Shift Commander designee / Lieutenant. He

7.

is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

17. Defendants Michael Pafumi, Melvin Saylor, Geermond, Bellerose, Ramos, John Doe #1 and John Doe #2 is/was at all times relevant to this complaint employees of the CTDOC assigned to NCI with the rank of Lieutenant. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

18. Defendant David Roston is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of Kitchen food service Administrator. He is being sued in his individual capacity for monetary Damages and in his official capacity for injunctive and declaratory relief.

19. Defendant John/Jane Doe #1 is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of Kitchen food service supervisor for first shift. He/She is being sued in his/her individual capacity for monetary damages and in his/her official capacity for injunctive and declaratory relief.

8.

20. Defendant John/Jane Doe #2 is and was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of second shift kitchen food service supervisor. he/she is being sued in his/her individual capacity for monetary damages and in his/her official capacity for injunctive and declaratory relief.

21. Defendants Jane/John Doe #1, John Doe #2, John Doe #3, John Doe #4, Santiago, Prior, Kidd, Pagon, Creboter, Josefiak, and Hartley is/was at all times relevant to this complaint a CTDOC employee assigned to NCI as correctional officers "C/OS". They are being sued in their individual capacity for monetary relief and in their official capacity for declaratory and injunctive relief.

22. Defendant Richard Furey is/was at all times relevant to this complaint a CTDOC employee assigned to NCI with the rank of Health Services Administrator. He is being sued in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief.

23. Defendants Shannon Lawrence, Barbara

9.

Savioe, Nigel Rodney, Sarah Potter, And Lashawn Cartwright is/was At All times relevant to this complaint A CTDOC employee Assigned to NCI As A Correctional Nurse. he/she is being sued in his/her individual Capacity for monetary damages and in his/her official capacity for injunctive and declaratory relief

## Facts

### Punitive Placement in manacle restraints And Preceding events.

24. On March 3, 2010, the Plaintiff submitted A complaint to former Warden Defendant Angel Quiros CC. the same to former Deputy Warden Defendant Steven Faucher and former Unit manager of the 1 west housing Unit Defendant captain Darryl Little Against Defendant Corrections officer "C/O" Matthew Prior Alleging Staff misConduct. See exhibit #1.

25. On March 4, 2010, the Plaintiff submitted A complaint to former Unit manager of the 1west Housing unit Defendant captain Darryl Little Against Defendant C/O Matthew Prior And

10.

Defendant Lieutenant Guermond Alleging Staff misconduct. See exhibit #2

26. Defendant Captain Darryl Little ignored the Plaintiff March 4, 2010, Complaint.

27. On April 5, 2010, the Plaintiff submitted a follow-up complaint in connection with his March 4, 2010, Complaint submitted to Defendant Captain Darryl Little to Defendant Angel Quiros for investigation and response. The Plaintiff April 5, 2010, Complaint was returned without response. See exhibit #3.

28. On April 5, 2010, being that Plaintiff failed to receive any response from Defendant Angel Quiros, Defendant Steven Faucher or Defendant Darryl Little he submitted a follow-up complaint in connection with his March 3, 2010, complaint to the same former Warden Defendant Angel Quiros for investigation and response. On April 9, 2010, former Warden Defendant Angel Quiros replied to Plaintiff April 5, 2010, follow-up complaint stating: "As stated to you before, you continue to fail to follow the chain of command. I will forward a copy of this request to D/w Faucher

to look into your Allegations based on the
information gathered, I will determine if An
investigation is warranted." See exhibit #4.

29. On April 27, 2010, the Plaintiff Received A reply
to his march 3, 2010, Complaint submitted to
former Deputy warden Defendant Faucher. Former
Deputy warden Defendant Steven Faucher reply
is dated "march 12, 2010." On former Deputy
warden Defendant Steven Faucher response is A
notation stating: "This is the second response
i have sent to you regarding this matter" dated
April 21, 2010. See exhibit #5.

30. At no time Prior to April 27, 2010, did
Plaintiff receive Any reply from former Deputy
warden Defendant Steven Faucher in connection
with the march 3, 2010, Complaint.

31. In Deputy warden Defendant Steven Faucher
response dated march 12, 2010, And April 21, 2010,
State: "An inquiry was conducted regarding
the Allegations you made regarding officer
Prior As Stated on the inmate request you
sent to my office dated 3/03/10. It has
been determined that your Allegations Are

12.

unsubstantiated And the officer conducted his duties in Accordance with A.D. 2.17. See exhibit #5

32. The Plaintiff Received A Reply dated may 5, 2010, from former ~~the~~ warden ~~defendant~~ Angel Quiros Stating: "The Attachment C that was sent to my office dated April 5, 2010, was Assigned To Lieutenant Siwicki to conduct A fact-Finding investigation. based upon the initial correspondence And After the interviews conducted with Staff, inmate witness And you, no evidence was discovered to substanti-Ate Any of your claims. To Conclude, no further investigatory proceeding Are warranted." See exhibit # 6.

33. ~~At~~ no time did Lieutenant Siwicki conduct Any interview with the Plaintiff or the Plaintiff's inmate witness i.e inmate Becker, The inmate(s) that was housed in 1 west cell # # 108, 210, 207, 212 who witnessed defendant cio Matthew Prior misconduct relevant to the March 3, 2010, complaint.

13.

34. On march 25, 2010, the plaintiff submitted a complaint to former warden Defendant Angel Quiros with cc. the same to former Unit Manager Defendant captain Darryl Little against Defendant c/o Matthew Prior alleging staff misconduct. See exhibit # 7

35. The plaintiff received a reply from former warden Defendant Angel Quiros dated April 6, 2010 stating: "this inmate request is being returned to you because you did not follow the chain of command. You have failed to address this matter with your unit manager". see exhibit # 8.

36. At no time did plaintiff receive any response from former unit manager Defendant captain Darcyl Little in connection with plaintiff's march 25, 2010, complaint.

37. On April 5, 2010, the plaintiff submitted a complaint to former warden Defendant Angel Quiros against Defendant c/o matthew prior and Defendant c/o Kidd ▇▇ alleging staff misconduct see exhibit # 9

14.

88. The plaintiff received a reply from former warden Defendant Angel Quiros in connection with the April 5, 2010, complaint dated May 4, 2010. In former warden Defendant Angel Quiros reply he Stated: "On April 9 2010 my office received a hand written complaint labeled "Attachment H." Lieutenant Siwicki was Assigned to conduct a fact finding investigation into your Allegations of Staff misconduct against Officer Prior. Based on Lieutenant Siwicki's investigation, it was determined that all your Allegations were false and without merit. Therefore, no further investigatory proceedings Are warranted regarding these Allegations" See exhibit # 10.

39. At no time did the plaintiff or the plaintiff inmate witnesses i.e. inmate Beikert, inmate Hulley, inmate rivard or inmate Saia who Are witnesses to the Allegations Asserted in plaintiff April 5, 2010, complaint see exhibit #9 have any interview with Lieutenant Siwicki                    :   '

40. Although Former warden Defendant Angel Quiros Stated in his May 4, 2010, response To

15.

Plaintiff April 5, 2010, complaint that "it was determined All your Allegations were False" See exhibit #10. At no time was the Plaintiff issued Any disciplinary report for false information in connection with the April 5, 2010, complaint exhibit #9. See Connecticut Department of Corrections Administrative directive 9.5 Code of Penal discipline Sections 1. policy, 13. class "B" offenses subsection G. giving false information And 18. Initiation of disciplinary report. (2008) As exhibit #11.

4. On March 14, 2010, the Plaintiff submitted A complaint to former Warden Defendant Angel Quiros Against Defendants C/O Mathew Prior, Lieutenant Melvin Baylor And Lieutenant Germond Alleging Staff misconduct. See exhibit #12.

42. On March 12, 2010, the Plaintiff submitted A complaint to former unit manager Defendant Captain Darryl Little Against Defendants C/O Mathew Prior, Lieutenant Melvin Baylor And Lieutenant Germond Alleging Staff misconduct.

43. Defendant Captain Darryl Little ignored the plaintiff March 12, 2010, complaint.

16.

44. The Plaintiff received a reply from former warden Defendant Angel Quiros dated March 18, 2010, in connection with the March 14, 2010, complaint stating: "I'am in receipt of your request dated 3/14/10 of allegations of staff misconduct. The allegations will be looked into and you will get a response once completed." See exhibit #13.

45. The Plaintiff did not hear anything back from former warden Defendant Angel Quiros in connection with the March 14, 2010, complaint.

46. On March 13, 2010, the Plaintiff submitted a complaint to former Deputy warden Faucher against Defendant C/O Matthew Prior alleging staff misconduct. On march 26, 2010, former Deputy warden Defendant Faucher replied stating: "Your request will be forwarded to captain Hines to look into this matter. Initial inquiry denied". See exhibit #14

47. At no time did the Plaintiff hear anything from captain hines in connection with the march 13, 2010, complaint submitted to former Deputy warden Defendant Steven Faucher

17.

48. On April 19, 2010, the plaintiff submitted a complaint to former unit manager Defendant Captain Darryl Little against Defendant clo Matthew Prior alleging staff misconduct. See Exhibit #15.

49. Defendant Captain Darryl Little ignored the plaintiff April 19, 2010, complaint.

50. On April 23, 2010, Defendant clo Kidd and Defendant clo Pagan was conducting breakfast feeding in the plaintiff housing unit which was the lowest housing unit.

51. Defendant clo Kidd wiped his nose with his left hand and then asked the plaintiff do he want coffee?

52. The plaintiff replied "yes", but that he wish not for clo Kidd to grabb the opened cup of coffee with his left hand.

53. Defendant clo Kidd again wiped his nose with his left hand and then grabb the opened cup of coffee and attempted to give it to the

18.

Plaintiff.

54. The Plaintiff refused to accept that cup of coffee stating that he will report Defendant C/O Kidd conduct to a Shift Supervisor or higher Authority.

55. At that time defendant C/O Kidd became very hostile, threatening and verbally Abusive towards The Plaintiff

56. On March 13, 2010, the Plaintiff submitted a complaint to former unit manager Defendant Captain Darryl little against Defendant C/O Santiago Allege Staff misconduct. see exhibit #16.

57. Defendant Captain Darryl little ignored the Plaintiff March 13, 2010, complaint.

58. On April 5, 2010, the Plaintiff submitted a follow-up complaint in connection with the March 13, 2010, complaint regarding Defendant Santiago to former warden Defendant Angel Quiros. In a reply dated April 9, 2010, former warden Defendant Angel

19.

Quiros stated: "Be Advised that you did not follow the chain of command. I will forward a copy to D/W Faucher to look into your Allegations. Also, based on the information gathered i will make a decision if the investigation is warranted, Not you". See exhibit #17.

59. At no time did The Plaintiff hear Anything from Former warder Defendant Angel Quiros or former Deputy warden Defendant Steven Faucher regarding the march 13, 2010, complaint regarding defendant Clo Santiago by way of Follow-up.

60. On march 13, 2010, the Plaintiff submitted a complaint to former Deputy warden Defendant Steven Faucher Against Defendant Clo Santiago Alleging Staff misconduct. See exhibit #18.

61. On march 26, 2010, former Deputy warden Defendant Steven Faucher responded to the march 13, 2010, complaint stating: "Your request will be forward to Captain hines to look into this matter Intial inquiry denied. See exhibit #19.

20.

62. At no time did the Plaintiff receive any follow-up reply from former Deputy Warden Defendant Steven Faucher or Captain Hines in connection with the March 13, 2010, complaint exhibit #18.

63. On April 23, 2010, Defendant Clo Santiago came to the Plaintiff cell to escort the Plaintiff to the exercise area for the Plaintiff one (1) hour of out of cell exercise.

64. Upon arriving at the Plaintiff cell door Defendant Santiago stated to the Plaintiff "Are you going outside". the Plaintiff replied "yes". Defendant Clo Santiago then stated: "Okay, you know the routine homo, strip down, spread your ass crack, cough, all that"!

65. The Plaintiff informed Defendant Santiago everytime Defendant Clo Santiago harras, taunt and disrespect the Plaintiff, the Plaintiff, will report his conduct to Defendant Clo Santiago supervisors.

66. Defendant Clo Santiago stated that he do

21.

not care about any of that because he
going to take care of the Plaintiff today!

67. After the Plaintiff was forced to strip or
not be permitted to participate in one(1)
hour of out of cell exercise The Plaintiff
was then placed in handcuffs, leg irons
And tether chain behind the back and
escort to the South exercise yard by
Defendant C/o Santiago.

68. During the escort the Plaintiff and
Defendant C/o Santiago cross paths at
the 1W-B Stair case with defendant
C/o Kidd.

69. At that time defendant C/o Kidd Stated
Something regarding the Plaintiff to
defendant C/o Santiago.

70. When the Plaintiff and defendant C/o
Santiago entered the exercise yard the
Plaintiff asked defendant C.O. Santiago
What did defendant C/o Kidd State?

71. At that time defendant C/o Santiago
Stated that defendant C/o Kidd Stated

22.

to put the plaintiff in the last exercise cage.

72. The exercise yard within the lowest housing unit is divided in three (3) consisting of three (3) cages to provide for the separateon of inmates.

73. each exercise cage is different in width and length from each other.

74. The last exercise cage is the smallest cage out of the three (3) cages.

75. The plaintiff was the first prisoner to make it out to the south exercise yard.

76. none of the three (3) exercise cages was occupied at that time.

77. ▓▓▓ the plaintiff asked defendant c/o santiago why the plaintiff have to go in the last exercise cage when the two (2) largest cages are empty?

78. defendant c/o santiago stated "because thats where we want to put you, other inmates is going in the other cages".

23.

79. The Plaintiff then asked Defendant C/o Santiago if the Plaintiff the first Prisoner out, why he can not go in the first cage (the largest) And the other Prisoners go in the other cages..

80. Defendant C/o Santiago Stated "because we dictate where you go And other inmates. At that time the Plaintiff told Defendant C/o Santiago that is un-equal treatment. And if the Plaintiff Can not go into the first cage he would like to return to his Cell.

81. At that time the Plaintiff was still hand-cuffed, Shackled And tethered behind the back.

82. The Plaintiff was told by Defendant C/o Santiago that he is going In the last cage, that the Plaintiff is outside now, that the Plaintiff have to stay out for the entire hour.

83. At that time the Plaintiff told Defendant C/o Santiago the plaintiff want to go back to his cell. The Plaintiff then turned Around to go back to the

24.

Cell.

84. At that time Defendant CIO Santiago Stepped on the chain to the leg irons which caused the leg irons to cut and bruise the Plaintiff ankles. Defendant CIO Santiago then Smashed his left elbow into the Plaintiff ~~lower~~ back forcing the Plaintiff to Fall chest/face first into the exercise cage fence.

85. Defendant CIO Santiago then throw his right Shoulder into the Plaintiff back Pinning the Plaintiff against the exercise cage fence.

86. At that time Defendant CIO Santiago Stated: "you got a big Fucking mouth, why you always got to complain about Something, one-day I'm really going to Fuck you up".

87. Defendant CIO Santiago then called to a Shift Supervisor via Radio Stating: "31 To a Floor Lieutenant" At that time Defendant Lieutenant Bellerose responded Stating "go" Defendant CIO Santiago then Stated: "can you 12 lw".

88. A few moments later Defendant CIO

25.

Santiago jumped back on the Radio And stated: " Inmate Alston Refusing to Lock-up"!

89. Defendant Clo Creboter entered the South Side exercise Area And Observed Defendant Clo Santiago pinning the Plaintiff Against the Fence As described Above.

90. At no time was the Plaintiff combative, Assaultive, threatening, hostile or non-compliant.

91. Defendant Clo Kidd entered the exercise Area And Asked Defendant Clo Santiago "Whats Up with our buddy Mr. Alston"?

92. At that time Defendant Clo Santiago Stated to Defendant Clo Kidd That the Plaintiff had wrote him Up A few weeks Ago, that Plaintiff did not want to go in the back Cage, that the Plaintiff Started complaining running his fucking mouth.

93. Defendant Clo Kidd then Asked Defendant Clo Santiago was the Plaintiff resisting?

94. Defendant Clo Santiago Stated that the Plaintiff was Pulling Away from

him. At that time the plaintiff told defendant C/O Kidd that the plaintiff would like to return to his cell if he can not exercise in the first exercise cage.

95. Defendant C/O Kidd told this plaintiff that the plaintiff can not dictate what exercise cage that they put him in.

96. The plaintiff then told defendant C/O Kidd that the plaintiff would like to return to his cell so the plaintiff could file a complaint regarding this incident.

97. Defendant C/O Kidd stated that everybody know the plaintiff M.O., that HE do not give a fuck. If the plaintiff want to gain defendant C/O Kidd respect use the pen to get the fuck out from down in the ones!

98. The plaintiff then told defendant C/O Kidd that the plaintiff could careless about gaining the respect of a C.O.

99. At that time the plaintiff didn't say anything else to the C/Os until the Lieutenant arrived.

100. Defendant Lieutenant Bellerose arrived within the 1 west housing unit South exercise area.

101. After Defendant CIO Santiago briefed Defendant Lieutenant Bellerose the plaintiff requested to speak. At that time Defendant Lieutenant Bellerose immediately stated that the plaintiff can not dictate what exercise cage that he is put into.

102. The plaintiff informed Defendant Lieutenant Bellerose that isn't the issue at this point, that the issue is whether or not the plaintiff can return to his cell.

103. Defendant Lieutenant Bellerose stated that it is up to the officers. Defendant CIO Bellerose then asked Defendant CIO Santiago do he want to terminate the plaintiff Rec?

104. At that time Defendant CIO Santiago stated yes. At that time Defendant Lieutenant Bellerose stated: okay, bring him back to his cell".

105. Defendant CIO Santiago and Defendant

C/O Kidd And Defendant Lieutenant Bellerose Along with Defendant C/O Creboter Then escorted The Plaintiff throw the exercise Area door And Proceeding to bring / escort the Plaintiff to his Cell # 211 within the 1 west housing Unit Located on The Upper tier.

106. During the escort Defendant Lieutenant Pafumi, Defendant C/O Matthew Prior And Defendant C/O Josefiak was entering into the 1 west housing unit from the front entrance.

107. When Defendant C/O Mathew Prior seen the Plaintiff Defendant C/O Matthew Prior Stated " Hey Ira". At that time Defendant Lieutenant Michael Pafumi Stated: " Damn We missed the fun"!

108. When the Plaintiff was being escorted up the 1W B Stair case to go back to his Cell, The Plaintiff overheard Defendant Lieutenant Michael Pafumi yell to Defendant Lieutenant Bellerose " What Are you doing That fucker like to file complaints And Sue us throw his Ass on in-cell restraints".

109. Defendant Lieutenant Bellerose then asked Defendant CIO Santiago was the Plaintiff "Actively Resisting to necessitate in-cell restraint placement?"

110. Defendant CIO Santiago at that time Stated "no".

111. Defendant CIO Kidd Stated "yes" the Plaintiff was Actively resisting that Defendant CIO Kidd Saw the Plaintiff "Actively resisting"!

112. Defendant CIO Santiago Stated: "well, yes, you could Say he was because he pulled away". At that time the Plaintiff Stated: "Only in your imagination was i Actively resisting".

113. Defendant Lieutenant Bellerose then Stated: "Fuck that go get the handheld camera". At that time Defendant CIO Kidd Ran and grabbed a handheld camera while the Plaintiff was then turned around on the 1wB Stair case and escorted to Side of the 1west control pod wall and was told To face the wall.

114. Defendant CIO Kidd Signed onto the

30.

handheld camera as the camera operator. Defendant Lieutenant Bellerose thereafter signed onto the handheld camera and stated that it have been reported that the plaintiff was "Actively resisting Staff and that the plaintiff Admitted to being Actively resisting therefore the determination was made to place the plaintiff on in-cell restraint status. See Video dvd NCI 10-0673

115. The plaintiff stated that he did not Admit to Anyone that he was Actively resistant. See Video dvd NCI 10-0673.

116. At that time the plaintiff was escorted to cell # 102 within the 1west housing unit by Defendants CIOS Creboter, Prior, Josefiak And Kidd And Defendant Lieutenant Bellerose. See Video dvd NCI 10-0673.

117. The plaintiff was placed on in-cell restraint status within cell # 102 within the 1 west housing unit by Defendants CIO Santiago, CIO Josefiak, CIO Prior, CIO Kidd CIO Crebuter And Defendant Lieutenant Bellerose. See Video dvd NCI 10-0673.

31.

118. At no time during the escort to cell #102 or during the in cell restraint placement was the plaintiff non-compliant, threatening, combative, assaultive, or resisting staff. See Video dvd NCI 10-0673.

119. At no time prior to the in cell restraint placement was the plaintiff destroying state property, attempting to commit suicide, threatening to commit suicide, or attempting to escape.

120. Defendant former warden Angel Quiros and former unit manager Defendant Captain Darryl Little have specifically designated cell ## 101-103 within the 1 west housing unit for inmates who display disruptive behavior and are placed in restraints status. See exhibit #20.

121. To place an inmate on in-cell restraint for alleged disruptive behavior is a disciplinary or punitive purpose which violate Connecticut Department of Corrections Administrative directive 9.4 Restrictive housing status and 6.5 use of force Section 8. Restraints subsection A. Authorized use. And Subsection B. In cell restraint #1. Criteria

122. The said cell wherein plaintiff was placed was dirty, filthy and unsanitary. The toilet and sink were encrusted with slime, dirt and human excremental residue superimposed thereon. The cell door window was defaced to the point one could barely see therein or thereout.

123. The said cell wherein plaintiff was placed was without the appropriate furnishing. The said cell was only furnished with a bed unit and a toilet/sink unit. The said cell toilet operations could not be controlled from the inside. The said cell toilet unit control mechanism have been re-constructed to outside the cell operations to where the 1 west housing unit corrections officers control the flushing of the toilet.

124. The said cell wherein plaintiff was placed was odorous and stunk of foul smelling odors.

125. the said cell wherein plaintiff was placed light remained on 24 hours a day.

33.

126. While the Plaintiff was being placed on in cell restraints Defendant Lieutenant Bellerose stated to Defendant Clo Matthew Prior that Defendant Lieutenant Michael Pafumi said that the Plaintiff is Dangerous to use the "Modified Restraints" for the in cell restraint Placement. See video dvd NCI 10-0673.

127. At that time Defendant Clo Matthew Prior exited the cell to retrieve the "Modified Restraints". See video dvd NCI 10-0673.

128. Defendant Clo Matthew Prior returned to the cell with the "Modified Restraints" See video dvd NCI 10-0673.

129. Defendants Clos Josefiak, Creboter and Prior then Strip-Searched the Plaintiff.

130. Defendants Clos Josefiak and Creboter held Plaintiff Arms while Defendant Clo Matthew Prior placed the metal modified handcuffs and leg irons on the Plaintiff way too tight causing swollen, cuts and un-necessary pain and sufferring. Defendants Clo Matthew Prior and Clo Josefiak then told the Plaintiff to put

34.

His legs together. The plaintiff complied. At that time Defendant CLO Matthew Prior then wrapped the tether chain around the handcuffs in three (3) universal to cause The plaintiff to be bent at the waist and for the tether chain to pull up on the leg irons to cause cuts, bruising and swollen and Pain and suffering to the plaintiff's Ankles.

131. When the plaintiff was placed on in-cell restraints on April 23, 2010, Defendants CLOS Josefiak, Prior, Crebo-ter and Defendants Lieutenant Bellerose and CLO Kidd had positioned themselves and the plaintiff in such a manner that the video dvd footage NCI 10-0673 can not focus on the "manner in which The modified restraints was applied on the plaintiff." See video dvd footage NCI 10-0673.

132. Obstructing the footage of the in cell restraint Placement violate Connecticut Department of Corrections Administrative directive 6.5 use of force Section 18. Video Recording.

133. On September 18, 2010, the Plaintiff submitted a complaint to former warden defendant Angel Quiros for investigation into the "strategic obstruction" of the camera view during the in cell restraint placement on April 23, 2010. On September 21, 2010, former warden defendant Angel Quiros in a written response denied the Plaintiff complaint/request for investigation. See exhibit #21.

134. After defendants Clos Matthew Prior Josefiak, Crebuter and defendant Lieutenant Bellerose applied the restraints on the Plaintiff, defendant correctional nurse Shannon Lawrence was called into the cell to examine the application of the modified restraints for the in cell restraint placement. See video dvd NCI 10-0673.

135. The application of the modified restraints for the Plaintiff April 23, 2010, in cell restraint placement are non-therapeutic restraints.

136. The health services staff shall not participate in the application of non-

Therapeutic restraint of inmates see University of Connecticut health center correctional managed health care policy and procedures for use within the Connecticut department of correction Revision dated 6/2008.

137. When defendant correctional nurse Shannon Lawrence examined the restraints she placed two (2) fingers inside plaintiff's interior wrist below the palm and not inbetween the plaintiff's outer wrist and the restraints where the injury occur.

138. Despite defendant correctional nurse Shannon Lawrence having first hand knowledge that the restraints were un-necessarily too tight she did not call for the restraints to be adjusted.

139. Despite defendant Lieutenant Bellerose having first hand knowledge that the restraints were un-necessarily too tight he did not cause for the restraints to be adjusted.

140. After defendant correctional nurse Shannon Lawrence examined the restraint application the plaintiff was directed to

LAY down on the bunk bed And the Officers And Nurse Left the Cell. See Video dvd NCI 10-0673.

141. On April 23, 2010, Defendant CLo Santiago issued The Plaintiff A Disciplinary report. In The body of The Disciplinary report Which WAS for "Flagrant disobedience" A Class "A" Offense, Defendant CLo Santiago Alleged Among Other things That the Plaintiff On April 23, 2010, At 905 Am WAS given A Direct order to enter the Rear (bAck) Recreation cAge. That The Plaintiff became Aggressively Active Resistant by Yelling And Pulling Away from The Officer And Refusing to follow A Direct order ... And Supervisor WAS Notified And responded. That the Plaintiff WAS escorted Out of the Recreation South to 1. West #102 to be PlAced on in-cell Restraints. See exhibit #22. And See exhibit #22 Use of force report creAted by Defendant CLo Santiago.

142. Defendant CLo Santiago Created An incident report-pAge1 in Connection with The April 23, 2010, incident. In Said

38.

Report Defendant Clo Santiago Alleged Among other thing that the Plaintiff was being escorted to recreation by Defendant Clo Santiago on April 23, 2010, At 9:25m, that the Plaintiff was given A Direct order to enter the rear (BACK) recreation cage. Upon entering recreation South the Plaintiff became Aggressively Active resistant by Yelling and Pulling Away From The officer And Refusing To follow A direct order. That Plaintiff was Quickly secured... Supervisor was notified And responded. THAt "The Plaintiff Then Became Compliant"., That The Plaintiff was escorted out of recreation South To 1 west # 102 To be placed on in - cell restraint. See exhibit # 28 (emphasis is Original).

143. Defendant Licutenant Bellerose have Created An incedent report supplemental page On April 23, 2010, in Connection with The April 23, 2010, incident. In said report Defendant Lieutenant Bellerose Alleged Among other things " At Approximately 9:25m i was summoned via radio to report to 1 west recreation yard. When i arrived i

39-

Observed Officers Santiago And Kidd securing
inmate Alston, Ira # 275666 Against the
outside of the recreation cages..He was
Angry he was unAble to select which
recreation cage he was being placed into. I
then determined it better to escort
Alston back to his cell And Allow his
time to calm down due to his obvious
irritation. On the way back to his cell i
was informed by escorting staff that he
had become Actively resistant with staff.
At this point i made the determination
to place Alston onto custody in cell
restraints ... I notified the kitchen
supervisor of the modified meal status..."
See exhibit # 25.

44. On April 23, 2010, Defendant Lieutenant
Bellerose created An incident summary
Report in connection with the April 23,
2010, incident. In said report Defendant
Lieutenant Bellerose Alleges Among other
Things " I Lt. Bellerose was called To 1
west... Alston became Actively resistant
with staff during routine escort To
recreation. Alston was Angry he could
not select which recreation cage he
would be placed into. Alston was placed

40.

On custody in cell restraints in 1 west 102 cell. "Alston was compliant once i was on scene"... Staff were professional at all times. see exhibit # 26.

145. Whether plaintiff April 23, 2010, in cell restraint placement was for retaliatory purposes for filing complaints or for alleged flagrant disobedience plaintiff placement on in cell restraints on April 23, 2010, was for a disciplinary purpose in violation of and in accordance with Administrative Directive 6.5 use of force sections 3. Definitions D. in cell restraint 8. Restraint A. Authorized use ## 4 and 5 B. In cell restraint # 1 criteria

146. On April 23, 2010, defendant correctional nurse Shannon Lawrence created a medical incident report in connection with the April 23, 2010, in cell restraint placement examination.

147. In defendant nurse Shannon report she alleged among other things that there was "ample spacing noted between extremities and restraints" see exhibit # 27.

148. Despite having first hand knowledge that the restraints was much too tight causing pain and suffering Defendant nurse Shannon Lawrence created her report in a fashion so highly misleading it amount to falsity.

149. Defendant Nurse Shannon Lawrence intentionally created her April 23, 2010, medical incident report in an attempt to prevent the plaintiff from proving the precise nature and extent of plaintiff injuries from the in-cell restraint placement in a court of law.

150. Defendant Lieutenant Bellerose and Defendant CIO Santiago both have created their April 23, 2010, Reports of the Recreation incident in an attempt to cover up and hide the truth of the April 23, 2010, incident.

151. On April 27, 2010, the plaintiff submitted a request to former Warden Defendant Angel Quiros for the Perservation of any/all security Nice vision footages on April 23, 2010

42.

At or About 8ᵃᵐ - 10ᵃᵐ Focusing on the South Recreation Area And Any / All Security nice vision Footages on April 23, 2010, At or About 8ᵃᵐ - 10ᵃᵐ Focusing on the / West housing Unit B / W Stair case. See exhibit # 28.

152. In A response dated April 29, 2010, To Plaintiff April 8ᵗʰ, 2010, request For Video perservation Defendant Angel Quiros Stated: " A copy of this inmate request Will be forwarded to O/W powers to handle your request. Once Completed you will be Advised in Writing. See exhibit # 29.

153. At no time WAS the requested nice vision Camera Security Footage of the April 23, 2010, Recreation yard incident Perserved As requested.

154. On June 22, 2010, Former Deputy Warden Defendant Faucher created An incident report in Connection With A review of All the documentation created in Connection With the April 23, 2010, in Cell restraint Placement. In Former Deputy Warden

43.

Defendant Steven Faucher report he report that "Defendant Lieutenant Bellerose was reminded by the Shift commander to ensure nice vision video footage is secured for incident of this matter" see exhibit # 30.

155. On July 6, 2010, Former Deputy warden Defendant Steven Faucher Acting As Unit Administrator At NCI created Another report in Connection with the April 23, 2010, in cell restraint Placement. In former Deputy warden Defendant Steven Faucher report he report that "Corrective Action taken to ensure Nice Vision footage is Secured." See exhibit # 30-1.

156. In A follow-up response to Plaintiff's April 27, 2010, request for Perservation of video footages Captain Hines Stated: "your request to perserve Camera footage representing the placement And removal of inmate Alston on in-cell type restraints has been Satisfied. Specifically, the handheld digital evidence of the Said Placement on April 23 2010 And removal On April 26, 2010 have been Secured..." See exhibit # 31.

157. Defendant Steven Faucher created his report regarding the perservation of the April 23, 2010, Nice Vision Security footage in a fashion so highly misleading it amount to falsity.

158. Defendant Steven Faucher, Former First Shift Commander Defendant Dennis Oglesby And Defendant Lieutenant Bellerose intentionally failed to reasonably take steps to ensure that the April 23, 2010, Nice Vision Security Footage be perserved in an attempt to Cover-op the truth of the April 23, 2010, recreation yard incident And in cell restraint placement.

159. On May 1, 2010, the Plaintiff submitted a complaint to former Warden Defendant Angel Quiros Against Defendant C/O Kidd Regarding the April 23, 2010, Breakfast Feeding incident. In a response dated May 18, 2010, Former Warden Defendant Angel Quiros stated: "your request for Initial Inquiry is denied. However, i will forward a copy of your ⌘/m request to D/W Faucher so that a memo can be placed in Roll Call book Advising Staff to wear hairnets

45.

And gloves. See exhibit # 32.

160. On May 1, 2010, the plaintiff submitted a seven (7) page complaint to former warden Defendant Angel Quiros regarding the initial Application of in-cell restraint placement on April 23, 2010, for punitive or disciplinary purposes. See exhibit #33.

161. On May 18, 2010, former warden Defendant Angel Quiros responded to the plaintiff May 1, 2010, complaint stating: "Allegations reviewed. A copy of your I/m request will be forwarded to D/w Faucher to review. Based on D/w Faucher's finding I will determine if an investigation is warranted See exhibit # 33-1

162. The plaintiff Received A follow-up Response from former warden Defendant Angel Quiros dated June 14, 2010, in connection with the May 1, 2010, complaint.

163. In former warden Defendant Angel Quiros June 14, 2010, follow-up reply he states: "on May 20, 2010, Deputy warden Faucher Assigned Captain Little to

investigate your Allegations written to
my office date may 1, 2010. Based on
Captain little's findings, i have determined
that there is no merit to any of the
Allegations. Therefore, no further
investigatory proceeding is warranted.
Cased closed. See exhibit #34.

164. Based upon information and belief former
Unit manager Defendant Captain Darryl
Little did not conduct any informal or
formal investigation into the Allegations
Raised in the Plaintiff's may 1, 2010,
Complaint (exhibit # 33).

165. Former Warden Defendant Angel Quiros
have created his June 14, 2010, report in a
fashion so highly misleading that it Amount
to falsity.

Punitive continuance on manacle
Restraints for the very Purpose of
inflicting pain and suffering.

166. On April 23, 2010, At Approximately 9:30am plaintiff
was placed on in-cell Restraint status. The

47.

Plaintiff Remained on in-cell restraints until April 26, 2010, where he was removed at Approximately 7:30 Am.

167. In Accordance with The Connecticut Department of Corrections Administrative Directive 6.5 Use of force Section 8 Restraints B. In Cell Restraints "an 6503, Restraint Checklist" were generated in connection with each day the plaintiff Remained on in cell restraints.

168. The facts And Circumstances leading up to the Use of in-cell restraints was not documented on The cn 6503, Restraint Checklist for April 23-26, 2010, In violation of Administrative directive 6.5 use of force Section 8. Restraints B. In Cell restraints. See exhibit # 35 through exhibit # 35-3.

169. On each cn 6503, Restraint Checklist that was generated in connection with each day the Plaintiff Remained on in cell restraint There isn't Any field on those documents To Record the facts And Circumstances leading to the Use of in cell restraints in violation of Administrative directive 6.5 use of force Section 8. Restraints B. In cell Restraints see

48.

exhibit #35 through exhibit #35-3.

170. On April 23, 2010, during the First shift hours for the First (5) hours And 15 minutes that Plaintiff remained on in cell restraints Defendant Clo Creboter recorded on the Cn 6503, Restraint Checklist that the plaintiff was yelling, beating on the door or wall And cursing See exhibit #35.

171. At no time was the plaintiff yelling, beating on the wall or door or cursing At Any staff member or inmate.

172. At no time did Defendant Clo Creboter issue the plaintiff Any disciplinary report for Allegedly "Causing A disruption" in Accordance with Administrative directive 9.5 Code of Penal discipline Section 13. CLASS 'B' Offenses Subsection B. Causing A Disruption See exhibit #11

173. Defendant Clo Creboter have created the April 23, 2010, Cn 6503, Restraint Checklist For the first Five (5) hours And Fifteen (15) minutes that Plaintiff remained on in cell Restraints in A Fashion so highly misleading that it Amount to Falsity.

49.

174. Defendant c/o creboter created the April 23, 2010, cn 6503, restraint checklist for the first five (5) hours and fifteen (15) minutes that the Plaintiff remained on in cell restraints for the sole purpose of conspiring to cause for the continuance of Plaintiff on in cell Restraints.

175. Defendant c/o creboter have first-hand knowledge that if he record on the cn 6503, restraint checklist that was being generated in connection with the Plaintiff in cell restraint placement that Plaintiff was behaving in such a manner whether true or false that information or documentation would cause for Plaintiff to be continued on in cell restraint.

176. At no time during the first shift hours on April 23, 2010, while the Plaintiff was on in cell Restraints did defendant captain bennis oglesby, defendant first shift commander designee Lieutenant john Doe or defendant captain Darryl Little observe the Plaintiff on in cell restraints in violation of Administrative Directives 6.5 use of force and 9.4 restrictive housing status Attachment A/2.

50.

177. On April 23, 2010, during the second shift hours that the plaintiff remained on in cell restraints defendant clo John Doe #2 recorded on the cn 6503, Restraint Checklist that the plaintiff was yelling, cursing and beating for eight (8) hours straight. See exhibit #35.

178. At no time was the plaintiff yelling, beating or cursing at any staff member or inmate.

179. At no time did defendant clo John Doe #2 issue the plaintiff any disciplinary report for allegedly "causing a disruption" in accordance with administrative directive 9.5 code of penal discipline section 13. Class 'B' Offenses Subsection B. Causing a Disruption See exhibit #11

180. Defendant clo John Doe #2 have created the April 23, 2010, cn 6503 restraint checklist during the second shift hours that plaintiff remained on in cell restraint in a fashion so highly misleading that it amount to falsity.

181. Defendant clo John Doe #2 have created the April 23, 2010, cn 6503 restraint checklist for the second shift hours that plaintiff remained on in cell restraints for the sole purpose of conspiring to cause for the continuance of

51.

Plaintiff on in cell restraints.

182. Defendant C/o John Doe #2 have first hand know-ledge that if he record on the Cn 6503, restraint Checklist that was being generated in connection with the plaintiff in cell restraint placement that Plaintiff was behaving in such a manner whether true or false that information or documentation would cause for plaintiff to be continued on in cell restraints.

183. At no time during the second shift hours on April 23, 2010, while the Plaintiff remained on in cell restraints did Defendant second shift commander Captain John Doe, Defendant second shift commander designee Lieutenant John Doe or Defendant Captain Darryl Little observe plaintiff on in cell restraints in violation of Administrative directive 6.5 use of force and 9.4 Restrictive housing Status Attachment A/2.

184. On April 23, 2010, during the second shift hours Defendant Melvin Saylor continued plaintiff on in cell restraints solely for disciplinary or punitive reasons as reflected on the April 23, 2010, Cn 6503, restraint Checklist see exhibit # 35.

52.

185. At no time did Defendant Lieutenant Melvin Baylor speak to the Plaintiff or otherwise endeavor to Ascertain the Physical condition of the Plaintiff on in Cell restraint during the Second Shift hours on April 23, 2010.

186 On April 23-24 2010 during the Third Shift hours that the Plaintiff remained on in Cell restraints Defendant Clo Pagan recorded on the Cn 6503, restraint checklist that the Plaintiff was yelling, Beating and cursing for eight (8) hours Straight non-stop without any Sleep See exhibit 35-C

187. At no time was the Plaintiff yelling, beating or Cursing At Any Staff member or inmate.

188. At no time did Defendant Clo Pagan issue the Plaintiff Any disciplinary report for Allegedly "Causing A disruption" in Accordance with Administrative directive 9.5 code of Penal discipline Section 13. Class B' offenses Subsection B. Causing A Disruption See exhibit # 11

189. Defendant Clo Pagan have Created the April 23-24 2010, Cn 6503, restraint checklist during the third Shift hours that Plaintiff remained on in cell restraints in A fashion So highly misleading that

53.

it Amount to falsity.

190. Defendant c/o pagan have created the April 28-24 2010, Cn 6503, restraint checklist for the Third Shift hours that plaintiff remained on in cell restraints for the sole purpose of conspiring to cause for the continuance of plaintiff in restraints.

191. Defendant c/o pagan have created the report with first hand knowledge that if he record on the Cn 6503, restraint checklist that was being generated in connection with the plaintiff in cell ████████ placement that plaintiff was behaving in such a manner whether true or false that information or documentation would cause for plaintiff to be continued on in cell restraints.

192 At no time during the Third Shift hours on April 28-24, 2010, while the plaintiff remained on in cell restraints did defendant Third Shift Commander Captain John Doe, defendant Third Shift Commander designee Lieutenant John Doe or defendant Captain Darryl Little observe the plaintiff on in cell restraints in violation of Administrative directives 6.5 Use of Force and 9.4 restrictive housing status Attachment A/2.

193. On April 24, 2010, during the third shift hours Plaintiff had conversation with Defendant Lieutenant Bellerose.

194. Plaintiff informed Defendant Lieutenant Bellerose that the Plaintiff is requesting to come off in cell restraints. Defendant Lieutenant Bellerose denied Plaintiff's Request. The Plaintiff informed Defendant Lieutenant Bellerose That the restraints is much too tight causing pain, injury and suffering.

195. Defendant Lieutenant Bellerose told the plaintiff that the restraints were placed on the Plaintiff for Plaintiff actively resistant behavior and the restraint Application was done to deter the plaintiff from Actively resisting Staff in the Future.

196. Defendant Lieutenant Bellerose ignored the Plaintiff complaints About the restraints being much to tight. Defendant Lieutenant Bellerose did not enter the Plaintiff cell And physical check the Restraints. Defendant Lieutenant Bellerose did not cause for the restraints To be Adjusted

197. Defendant Lieutenant Bellerose continued

Plaintiff on in cell restraints solely for disciplinary or punitive reasons as reflected on the April 23-24 2010, cn 6503, restraint checklist see exhibit # 35-1.

198. On April 24, 2010, during the first shift hours that the plaintiff remained on in cell restraints defendants c/o's John Doe # 3 and John Doe # 4 recorded on the cn 6503, restraint checklist that the plaintiff was spitting at his cell door window, yelling, screaming, beating on door or wall and cursing for eight (8) hours straight non-stop see exhibit #35-1.

199. At no time was the plaintiff yelling, spitting, beating or cursing at any staff member or inmate.

200. At no time did defendants c/o's John Doe # 3 and John Doe # 4 issue the plaintiff any disciplinary report for allegedly " causing a disruption " in accordance with administrative directive 9.5 code of penal discipline section 13. CLASS 'B' OFFENSES sub-section B. CAUSING A DISRUPTION exhibit # 11

201. Defendants c/o's John Doe # 3 and John Doe # 4 have created the April 24, 2010, cn 6503, restraint checklist for the first shift hours that plaintiff

remained on in cell restraints for the sole purpose of conspiring to cause for the continuance of Plaintiff on in cell restraints.

202. Defendants C10s John Doe #3 and John Doe #4 have first hand knowledge that if they record on the Cn 6503, restraint checklist that was being generated in connection with the Plaintiff in cell restraint placement that Plaintiff was behaving in such a manner whether true or false that information or documentation would cause for Plaintiff to be continued on in cell restraints.

203. Defendants C10s John Doe #3 and John Doe #4 have created the April 24, 2010, Cn 6503, restraint checklist during the first shift hours that Plaintiff remained on in cell restraint in a fashion so highly misleading it amount it falsity.

204. At no time during the first shift hours on April 24, 2010, while Plaintiff remained on in cell restraints did Defendant Angel Quiros, Defendant Darryl Little, Defendant Dennis Oglesby or Defendant first shift commander designee Lieutenant John Doe observe Plaintiff on in cell restraints in violation of Administrative directive 6.5 use of force and 9.4 Restrictive housing status Attachment A/2.

57.

205. On April 24, 2010, at 2:00pm Defendant Lieutenant Michael Pafumi created an incident Report - Supplemental page in connection with The continuation of the April 23, 2010, in cell Restraint placement. See exhibit #36.

206. On April 24, 2010, at 10:18 am Defendant Lieutenant Michael Pafumi continued Plaintiff on in cell restraints for Allegedly non-compliant behavior A disciplinary or punitive reason in violation of Administrative directive 6.5 U.S.e of Force Section 8 B#1. See exhibit #36

207. On April 24, 2010, Defendant Lieutenant Michael Pafumi was not the Unit Manager of the 1 west housing unit, the First Shift Commander, the First Shift Commander designee or the Unit Administrator.

208. On April 24, 2010, Defendant Lieutenant Michael Pafumi did not have Any Administrative Authority under Administrative directive 6.5 Use of force Section 8 B#6 And #7 to Continue the plaintiff on in cell restraints.

209. On April 24, 2010, during the first Shift hours Defendant Lieutenant Michael Pafumi did not

Speak to the Plaintiff or otherwise endeavor to ascertain the physical condition of Plaintiff on in cell restraint during the first shift hours on April 24, 2010.

210. At no time did Defendant Lieutenant Michael Pafumi issue the Plaintiff any disciplinary report for allegedly "non-compliant" behavior in accordance with Administrative Directive 9.5 Code of Penal discipline Section 13. Class 'B' Offenses E. Disobeying A direct order see exhibit #11

211. Defendant Lieutenant Michael Pafumi have created the April 24, 2010, incident report Supplemental page in A Fashion So highly mis-leading it amount to falsity.

212. On April 24, 2010, during the Second Shift hours that Plaintiff remained on in cell restraints Defendant C/O John Doe #2 recorded on the Cn 6503, restraint Checklist that the Plaintiff was yelling, screaming and cursing for the entire (8) hour Shift Save but for one (1) hours. See exhibit #35-1

213. At no time was the Plaintiff yelling, screaming or cursing At any Staff member or inmate.

59.

214. At no time did Defendant clo john Doe # 2 issue the Plaintiff any disciplinary report for Allegedly "causing a disruption" in accordance with administrative directive 9.5 code of Penal discipline Section 13. B. see exhibit # 11

215. Defendant clo john Doe # 2 have created the April 24, 2010, cn 6503, restraint checklist during the second shift hours that Plaintiff remained on in cell restraint in a fashion so highly misleading that it amount to falsity.

216. Defendant clo john Doe # 2 created the April 24, 2010, cn 6503 restraint checklist for the second shift hours that Plaintiff remained on in cell restraints for the sole purpose of conspiring to cause for the continuance of Plaintiff on in cell restraints.

217. Defendant clo john Doe # 2 created the report with first hand knowledge that if he record on the cn 6503, restraint checklist, that was being generated in connection with Plaintiff in cell restraint placement, that Plaintiff was behaving in such a manner whether true or false that information or documentation would cause for Plaintiff to be continued on in cell restraint.

218. At no time during the second shift hours on April 24, 2010, while plaintiff remained on in cell restraints did Defendant second shift commander captain John Doe, Defendant second shift commander designee Lieutenant John Doe or Defendant captain Darryl little observe plaintiff on in cell restraints in violation of Administrative Directives 6.5 use of force and 9.4 restrictive housing status Attachment A/2.

219. On April 24, 2010, during the second shift hours Defendant Melvin Saylor continued plaintiff on in cell restraints solely for disciplinary or punitive reasons as reflected on the April 24, 2010, cn 6503 restraint checklist see exhibit #35-1

220. At no time did Defendant Lieutenant melvin saylor speak to the plaintiff or otherwise endeavor to ascertain the physical condition of the plaintiff on in cell restraint during the second shift hours on April 24, 2010.

221. On April 24-25, 2010, during the Third shift hours it was documented on the cn 6503 restraint checklist generated in connection with plaintiff in cell restraint placement that the plaintiff for the majority of the Third shift hours on

61.

April 24-25, 2010, was in Compliance with All Department And institutional Rules And Regulations. See exhibit # 35-2.

222. On April 25, 2010, during the third Shift hours the Plaintiff had Conversations with Defendant Lieutenant Bellerose.

223. During the Plaintiff's Conversation with Defendant Lieutenant Bellerose Plaintiff Requested to be Removed from in cell Restraints. Defendant Lieutenant Bellerose denied Plaintiff request to be removed from in cell restraints.

224. During the Plaintiff's Conversation with Defendant Lieutenant Bellerose the Plaintiff inform Defendant Lieutenant Bellerose that the restraints Continue to be much to tight And harming the Plaintiff. Defendant Lieutenant Bellerose ignored the Plaintiff's Complaints of pain and Suffering And exited the tier.

225. At no time did Defendant Lieutenant Bellerose On April 25, 2010, during the third Shift hours investigate Plaintiff's Complaints of pain and Suffering or cause for the restraints to be Adjusted.

226. At no time during the Third Shift hours on April 24-25, 2010, while Plaintiff remained on in Cell restraints did Defendant Third Shift Commander Captain John Doe, Defendant Third Shift Commander designee Lieutenant John Doe or Defendant Darryl Little observe Plaintiff on in Cell restraints in violation of Administrative Directives 6.5 Use of Force And 9.4 Restrictive housing Status Attachment A/2.

227. On April 25, 2010, during the First Shift hours that the Plaintiff remained on in cell restraints Defendant ~~____~~ John Doe #4 recorded on the Cn 6503, restraint Checklist that the Plaintiff was yelling, screaming, cursing and beating on the door for eight (8) hours straight non-stop. See exhibit # 35-2.

228. At no time was the Plaintiff yelling, screaming beating or cursing at any staff members or other inmates.

229. At no time did Defendant ~~____~~ John Doe #4 issue Plaintiff any disciplinary report for Allegedly "causing a disruption" in Accordance with Administrative Directive 9.5 Code of Penal discipline Section 13.B.

63.

230. Defendant ~~███~~ John Doe #4 have created the April 25, 2010, Cn 6503, restraint checklist for the first shift hours that Plaintiff remained on in cell restraints for the sole purpose of conspiring to cause for the continuance of Plaintiff on in cell restraints.

231. Defendant ~~███~~ John Doe #4 have first hand knowledge that if he ███ record on the Cn 6503, restraint checklist that was being generated in connection with Plaintiff in cell restraint placement that Plaintiff was behaving in such a manner whether true or false that information or documentation would cause for Plaintiff to be continued on in cell restraints.

232. Defendant CIO ~~███~~ John Doe #4 created the April 25, 2010, Cn 6503, restraint checklist during the first shift hours that Plaintiff remained on in cell restraints in a fashion so highly misleading it amount to falsity.

233. At no time during the first shift hours on April 25, 2010, while Plaintiff remained on in cell restraints did Defendant

Angel Quiros, Defendant Darryl Little, Defendant Dennis Oglesby or Defendant First Shift Commander designee Lieutenant John Doe observe Plaintiff on in cell restraints in violation of Administrative Directives 6.5 Use of Force And 9.4 Restrictive housing status Attachment A/2

234. On April 25, 2010, At 11$\frac{45}{am}$ Defendant Lieutenant ████ Geermond created an incident report - Supplemental page in connection with the continuation of the April 23, 2010, in cell restraint placement See exhibit #37

235. On April 25, 2010, At Approximately 10$\frac{30}{am}$ Defendant Lieutenant Geermond continued Plaintiff on in cell restraints for Allegedly disruptive behavior As noted on the Cn 6508, restraint Checklist And reports from the Unit Staff. Defendant Lieutenant Geermond in his report Stated that the Plaintiff's behavior on April 25, 2010, during the First Shift hours continues to Present A risk to the Safety of Staff And Others As Well As An increased risk of interference with Facility Operations.

Defendant Lieutenant Geermond made the
determination to continue Plaintiff on in
cell restraints for allegedly continued
disruptive behavior a punitive or
disciplinary purpose in violation of
Administrative Directive 6.5 Use of
Force Section 8. A. See exhibit # 37.

236. On April 25, 2010, while the Plaintiff
remained on in cell restraints at no time
during the First Shift hours did Defendant
Lieutenant Gyermond or any other Staff
member issue the Plaintiff any disciplinary
report for allegedly "Causing a Disruption"
or "Creating a Distrubance" or
"Interfering with Safety and / or Security"
in Accordance with Administrative
Directive 9.5 Code of Penal Discipline
See exhibit #11

237. On April 25, 2010, during the First
Shift hours Plaintiff had a conversation
with Defendant Lieutenant Geermond.

238. During the conversation with Defendant
Lieutenant Geermond the Plaintiff informed
Defendant Lieutenant Geermond That

the restraints are much too tight and harming the Plaintiff. At no time did Defendant Lieutenant Germond investigate Plaintiff Complaints about pain and suffering.

239. At no time did Defendant Lieutenant Germond physically inspect the restraints. At no time did Defendant Lieutenant Germond cause for the restraints to be Adjusted.

240. On April 25, 2010, During the conversation with Defendant Lieutenant Germond the Plaintiff was Accused of being disruptive. Plaintiff informed Defendant Lieutenant Germond that if he were to Ask the inmates in the surrounding Area have they heard Any disruptive Noises comming from Plaintiff Cell They would tell Defendant Lieutenant Germond "No".

241. At that time Defendant Lieutenant Germond Stated "who Cares what an inmate say". All inmates lie. Plaintiff then told Defendant Lieutenant Germond that it is obvious to the Plaintiff that either Germond is lieing or one of Germond's subordinates have lied to him About the Plaintiff being disruptive.

67.

242. At that time Defendant Lieutenant Germond stated: "Well guess what i got news for you, your placement on in cell have been continue see you tomorrow"! At that time Defendant Lieutenant Germond exited the tier.

243. On April 25, 2010, during the first shift hours Defendant Lieutenant Germond was not the unit manager, unit Administrator, First Shift Commander or The First shift Commander designee.

244. On April 25, 2010, Defendant Lieutenant Germond did not have any Administrative Authority under Administrative directive 6.5 Use of force section 8 B #6 and /or 8 B #7 to Continue Plaintiff on in cell restraints.

245. Defendant Lieutenant Germond have created The April 25 2010 incident report Supplemental page in a fashion so highly misleading it Amount to falsity.

246. On April 25, 2010, during the second shift hours that Plaintiff remained on in cell restraints Defendant c/o ████ John Doe #1 Recorded on the

68.

On 6503, Restraint Checklist that the plaintiff was yelling, screaming or cursing. See exhibit #35-2.

247. At no time was the plaintiff yelling, screaming or cursing at any staff member or inmate.

248. At no time did Defendant CLO Jane/John Doe #1 issue the plaintiff any disciplinary report for allegedly "causing a disruption" in accordance with administrative directive 9.5 code of penal discipline Section 13. B. See exhibit #11

249. Defendant CLO Jane/John Doe #1 have created the April 25, 2010, On 6503, restraint checklist during the second shift hours that plaintiff remained On in cell restraint in a fashion so highly misleading that it amount to falsity.

250. Defendant CLO Jane/John Doe #1 created the April 25, 2010, On 6503, restraint checklist for the second shift hours that plaintiff remained On in cell restraints for the sole purpose of conspiring to cause for the continuance of plaintiff on in cell restraints.

251. Defendant CLO Jane/John Doe #1 had first hand knowledge that if she/he record on the

69.

On 6503, restraint Checklist, that was being generated in Connection with Plaintiff in cell restraint placement, that Plaintiff was behaving in Such a manner whether true or false that information or documentation would cause for Plaintiff to be continued on in cell restraint.

252. At no time during the second shift hours on April 25, 2010, while Plaintiff remained on in cell restraints did Defendant Second shift Commander Captain John Doe, Defendant Second shift Commander designee Lieutenant John Doe or Defendant Darryl Little observe Plaintiff on in cell restraints in Violation of Administrative Directive 6.5 Use of Force and 9.4 Restrictive housing Status Attachment A-12

253. On April 25, 2010, during the Second shift hours Defendant Lieutenant John Doe #1 Continued Plaintiff on in cell restraints solely for disciplinary or Punitive Reasons As Feflected on the April 25, 2010, On 6503, restraint Checklist See exhibit # 35-2

254. At no time did Defendant Lieutenant John Doe #1 speak to the Plaintiff or otherwise endeavor to Ascertain the physical condition of the plaintiff

70.

on in cell restraint during the second shift hours on April 25, 2010.

255. On April 25-26, 2010, during the third shift hours it was documented on the cn 6503 restraint checklist generated in connection with plaintiff in cell restraint placement that the plaintiff during the third shift hours was in compliance with all department and institutional rules and/or regulation See exhibit # 35-3

256. On April 26, 2010, during the third shift hours the plaintiff had conversations with Defendant Lieutenant Bellerose and Defendant Lieutenant Ramos.

257. During the plaintiff's conversations with Defendant Lieutenant Bellerose and Defendant Lieutenant Ramos plaintiff requested to be removed from in cell restraints. Defendant Lieutenant Bellerose denied plaintiff request to be removed from in cell restraints.

258. During the plaintiff's conversation with Defendant Lieutenant Bellerose and Defendant Lieutenant Ramos the plaintiff informed Defendants ~~_____~~ Lieutenants Bellerose and Ramos

that the restraints continue to be much to tight and harming the Plaintiff. Defendant Lieutenant Bellerose ignored the Plaintiff's complaints of pain and suffering as well as Defendant Lieutenant Ramos.

259. At no time did Defendant Lieutenant Ramos or Defendant Lieutenant Bellerose enter plaintiff cell and physically inspect the restraints. At no time did Defendant Lieutenant Ramos or Defendant Lieutenant Bellerose cause for the restraints to be adjusted.

260. At no time during the Third Shift hours on April 26, 2010, while Plaintiff remained on in cell restraints did Defendant third Shift commander Captain John Doe, Defendant third Shift commander designee Lieutenant John Doe or Defendant Darryl Little observe Plaintiff on in cell restraints in violation of Administrative Directives 6.5 use of force and 9.4 Restrictive housing Status Attachment A12.

261. On April 26, 2010, during the First Shift hours at 7:30am Plaintiff was removed from in cell restraints After 70 hours of placement. See exhibit # 35-3

72.

262. On May 10, 2010, the plaintiff submitted a (7) page complaint to former warden Defendant Angel Quiros for investigation into the Arbitrary, Capricious, Punitive or disciplinary Continuances on in cell Restraints.

263. Defendant Angel Quiros on May 25, 2010, Responded denying Plaintiff Request for investigation to complaints ## 1 of 7, 2 of 7, 4 of 7 And 7 of 7. Defendant Angel Quiros did not Return or Respond to complaints ## 3 of 7, 5 of 7 And 6 of 7. The Plaintiff on May 27, 2010, Sent A Request to Former warden Defendant Angel Quiros inquiring of the missing pages to his Seven (7) Page complaint Submitted to his office by the Plaintiff on May 10, 2010. See Exhibit # 38

264. At no time did Defendant Angel Quiros respond or igt Acknowledge the May 27, 2010, Request to him inquiring of the missing complaint pages.

265. Defendant Angel Quiros Denied complaints ## 1, 2, 4 And 7. See Exhibit # 39 through Exhibit # 39-3.

266. On December 31, 2010, the plaintiff Filed a Level one (1) grievance Complaining About the Creation, Adoption, And continued enforcement of

the Connecticut Department of Corrections State-wide policy-Administrative directive 6.5 Use of force that Condone, permit, and authorize directly or indirectly, providing for inadequate guidance for, the placement of Prisoners on in cell restraints for ████████ "Acutely disruptive behavior". A punitive or disciplinary purpose which is not defined in the text of the Statewide policy-Administrative directive 6.5 Use of force. On January 6, 2011, former warden Defendant Angel Quiros denied the Level one (1) grievance stating "your grievance regarding unit policy is denied. The use of Restraints at NCI is in Accordance with policies and procedures." See exhibit #40.

267. On January 19, 2011, the plaintiff submitted a Level two (2) Appeal to District Administrator Defendant Michael P. Lajoie Appealing the Level one (1) disposition. On February 18, 2011, District Administrator Defendant Michael P. Lajoie denied the Level two (2) Appeal stating: "you are Appealing a Level-1 grievance concerning unit policy. As Stated by Warden Quiros, the use of restraints is in Accordance with policies and procedures. The Restraint policy has been Reviewed and approved and will not be modified. Your Level 2 Appeal is denied." See exhibit #41.

74.

268. Former Commissioner Defendant Theresa Lantz created The State-wide policy Administrative directive 6.5 Use of Force that Condone, Permit, And Authorize And Provide for inadequate guidance for The placement of Prisoners on in cell restraint Status for Punitive And /or disciplinary Purposes.

269. Commissioner Defendant Leo Arnone have continued the enforcement of the state-wide policy Administrative directive 6.5 Use of Force that Condone, Permit And Authorize the placement of Prisoners on in cell restraints for extended Periods of time for disciplinary or Punitive Purposes.

270. Commissioner Defendant Leo Arnone have continued the enforcement of the State wide policy Administrative directive 6.5 Use of force that Provide inadequate guidance for the use And duration of in cell restraints.

271. Defendants Michael P. Lajoie, Theresa Lantz, And Leo Arnone knew through reports and other documentation that unconstitutional Practices was occuring At NCI with the Punitive or disciplinary placement of Prisoners on in cell restraints for extended Periods of time for

75.

punitive or disciplinary purposes And Knowingly, willfully And /or intentionally with callous difference to prisoners safety, health, And security failed to take Any corrective measure to cease the practice At NCI.

272. If not for the creation, Adoption And continuation of said policy the plaintiff would not have been subjected to torture, corporal punishment, unusual and cruel punishment and cruelty to his person from the manacle restraint placement on April 23 - 26, 2010.

## Medical Personnel participation And involvement In the continued punishment And conspiracy.

273. On April 23, 2010, during the second shift hours plaintiff had conversations with correctional nurse defendant nigel Rodney.

274. During this conversation the plaintiff informed correctional nurse defendant nigel Rodney that the tether chain have been shorten in A manner that if plaintiff would stand erect the tether chain would pull up on the leg irons chain causing injury swollen And pain to plaintiff's Ankles, therefore, plaintiff have no choice but to be bent At the waist to prevent Any further injuries to his Ankles. The plaintiff Also informed correctional nurse defendant

76.

nigel Rodney that the hand and leg restraints was much too tight and harming the Plaintiff.

275. At no time did Correctional Nurse Defendant nigel rodney enter plaintiff's cell and physically inspect the restraint application.

276. At no time did correctional Nurse Defendant nigel Rodney investigate the Plaintiff's complaints about pain and suffering.

277. Defendant nigel Rodney did not make any record in plaintiff HR 401, clinical health record-file regarding the April 23, 2010, conversation during the second shift in an attempt to prevent the Plaintiff from proving the nature and extent of his injuries from the in cell restraint placement in a court of law.

278. At no time did Correctional Nurse Defendant Nigel Rodney cause for the restraints to be adjusted.

279. On April 23, 2010, at 8 p.m Correctional Nurse Defendant nigel Rodney created an medical incident Report in connection with Plaintiff in cell restraint placement. In The report correctional nurse Defendant nigel Rodney recorded the Plaintiff was "Alert and oriented x 3, gait steady", ample spacing noted times four," skin

intact, no complaints offered to medical at this time." <u>See</u> exhibit #12

280. At no time did Correctional Nurse Defendant nigel Rodney create any follow-up notation in the Plaintiff's HR 401, clinical health record Regarding the information recorded on the medical incident report that was distributed to Custody personnel at the Northern Facility.

281. Correctional Nurse Defendant nigel Rodney have created the April 23, 2010, medical incident report in a fashion So highly misleading that it amount to falsity.

282. On April 24, 2010, during the first shift hours the Plaintiff had Conversation with corrections nurse Defendant Barbara Savoie.

283. During this Conversation the plaintiff informed Corrections Nurse Defendant Barbara Savoie that the tether chain have been shorten in a manner designed to leave the Plaintiff bent over at the waist, that the handcuffs and Leg irons was placed on much too tight and harming the Plaintiff.

284. At no time did corrections nurse Defendant Barbara Savoie cause for the restraint to be Adjusted.

78.0

285. At no time did corrections nurse Defendant Barbara Savoie enter plaintiff's cell and physically inspect the restraints. At no time did corrections nurse Barbara Savoie investigate the plaintiff's complaints about pain and suffering.

286. Corrections nurse Defendant Barbara Savoie did not make any record in plaintiff HR 401, clinical health record regarding the April 24, 2010, conversation during the second shift hours in an attempt to prevent the plaintiff from proving the nature and extent of his injuries from the in cell restraint placement in a court of law.

287. On April 24, 2010, at 9:15 am corrections nurse Defendant Barbara Savoie created an medical incident report in connection with Plaintiff in cell restraint placement. In the report corrections nurse Defendant Barbara Savoie recorded that the plaintiff, inter alia, "Refused to come to door," but noted moving under blankets stated "I'm fine." See exhibit #43

288. At no time did corrections nurse Defendant Barbara Savoie create any follow-up notation in the Plaintiff's HR 401, clinical health record regarding the information recorded on the medical incident report that was later distributed to custody officials at NCCI.

289. Corrections nurse Defendant Barbara Bavoie have created the April 24, 2010, medical incident report in a fashion so highly misleading that it amount to falsity.

290. At no time during the second shift hours on April 24, 2010, did the plaintiff have any conversation with corrections nurse Defendant Lashawn Cartwright.

291. At no time did corrections nurse Defendant Lashawn Cartwright enter plaintiff's cell and physically inspect the application of the restraints.

292. On April 24, 2010, at 8:35pm corrections nurse Defendant Lashawn Cartwright created an medical incident report in connection with plaintiff in cell restraint placement that substantially mirror the report created by corrections nurse Defendant Barbara Bavoie see exhibit #44

293. At no time did corrections nurse Defendant Lashawn Cartwright create any follow-up notation in the plaintiff's HR 401, clinical health record regarding the information recorded in the medical incident report that was later distributed to custody officials at NCI.

294. Corrections nurse Defendant LaShawn Cartwright have created the April 24, 2010, medical incident report in a fashion so highly misleading that it amount to falsity.

295. On April 25, 2010, during the first shift hours the Plaintiff again, had conversation with corrections nurse Defendant Barbara Savoie.

296. During this conversation the Plaintiff informed corrections nurse Defendant barbara Savoie that he is in extreme pain from the restraints.

297. At no time did corrections nurse Defendant Barbara Savoie enter plaintiff's cell and physically inspect the Restraint Application.

298. At no time did corrections nurse Defendant Barbara Savoie investigate plaintiff's complaints about pain and suffering caused by the restraints.

299. At no time did corrections nurse Defendant Barbara Savoie investigate or cause for the plaintiff restraints to be Adjusted.

300. On April 25, 2010, at 9am corrections nurse Defendant Barbara Savoie created an medical

incident report in connection with plaintiff's in cell restraint placement. In the report corrections nurse Defendant Barbara Savoie recorded that, inter alia, the plaintiff: "noted lying on Bunk, would not Acknowledge this writer, But noted to be moving under Blankets" See exhibit #45

301. At no time did corrections nurse Defendant Barbara Savoie create any report in Plaintiff's HR 401, clinical health record regarding the conversation on April 25, 2010, during the first shift hours in an attempt to prevent the plaintiff from proving the nature and extent of his injuries from the in cell restraint placement in a court of law.

302. At no time did corrections nurse Defendant Barbara Savoie create any follow-up notation in the Plaintiff's HR 401, clinical health record regarding the information recorded in the April 25, 2010, medical health incident report that was later distributed to custody officials at NCI.

303. Corrections nurse Defendant Barbara Savoie have created the April 25, 2010, medical incident report in a fashion so highly misleading that it amount to falsity.

304. On April 25, 2010, during the second shift hours the plaintiff had conversation with corrections nurse Defendant Sarah potter.

305. During this conversation with corrections nurse Defendant Sarah potter the plaintiff informed corrections nurse Defendant Sarah potter that the plaintiff is in extreme pain, that the tether chain have been shorten to leave the plaintiff bent over at the waist and that the handcuffs and leg irons were much too tight harming the plaintiff.

306. At no time did corrections nurse Defendant Sarah Potter enter plaintiff's cell and physically inspect the restraint application

307. At no time did corrections nurse Defendant Sarah Potter investigate plaintiff's complaints about pain and suffering caused by the restraints.

308. At no time did corrections nurse Defendant Sarah Potter cause for the plaintiff restraints to be adjusted.

309. On April 25, 2010, at 8ᴘᴹ corrections nurse Defendant Sarah potter created an medical incident report in connection with plaintiff's in cell restraint placement. In the report corrections nurse

83.

Defendant Sarah Potter recorded that, inter alia, the Plaintiff was "Alert and Oriented x 3, "Ample spacing noted", ⊕ cms, skin intact" <u>see</u> exhibit #46

310. At no time did corrections nurse Defendant Sarah Potter create any report in plaintiff's HR 401, clinical health Record Regarding the conversation on April 25, 2010, during the second shift hours in an attempt to Prevent the plaintiff from proving the nature and extent of his injuries from the in cell restraint placement in a court of law.

311. At no time did corrections nurse Defendant Sarah Potter create any follow-up notation in the plaintiff's HR 401, clinical health Record regarding the information recorded in the April 25, 2010, medical health incident report that was later distributed to custody officials at NCI.

312. Corrections nurse Defendant Sarah Potter have created the April 25, 2010, medical incident report in a fashion so highly misleading that it amount to falsity.

313. Health service Administrator Defendant Richard Furey has the Responsibility of supervising and training each and every corrections nurse assigned to the Northern corrections institution medical

84.

department.

314. Health Service Administrator Defendant Richard Furey Despite his Knowledge that the corrections nurse Defendants Barbara Savoie, Sarah Potter, nigel Rodney And Lashawn Cartwright was and continue to conspire with custody official here At NCI in the torture And corporal punishment of inmates have willingly and intentionally with callous indifference to the Plaintiff and other inmates safety, health And security failed to implement any corrective measure to cease the involvement and participation As well As the creation of false and misleading Reports solely designed to cover-up the truth regarding the Arbitrary, capricious, Punitive and disciplinary application of in cell restraints in An Attempt to Prevent the Plaintiff And other inmates From proving the nature and extent of any injuries resulting from the in cell restraints.

<u>Kitchen Supervisors Participation And Involvement in the punishment and Conspiracy.</u>

315. The Plaintiff As well As the rest of the general Prison population here At NCI daily diet is in Accordance with the Northern C.I. master

85.

menu.

316. Inmates at NCI more specifically, inmates assigned to the 1 west housing unit are served their meals inside their cells.

317. Inmates meals at NCI are served in Styrofoam trays with a eating utensil for food consumption.

318. On April 23, 2010, after the plaintiff was placed on in cell restraints Defendant Lieutenant Bellerose sent a memo to the First Shift Kitchen Supervisor Defendant John Doe and the second Shift Kitchen Supervisor Defendant John Doe to place the plaintiff on "modified meal status" See exhibit #47

319. The plaintiff while on this "modified meal status" was provided less quantity of the daily diet proportions that is served the general prison population at NCI and that the plaintiff would have been served if not on this "modified meal status".

320. The plaintiff while on this "modified meal status" at no time was provided with any type

or Kind of eating instrument.

321. the Plaintiff while on the "modified meal
Status" was served his daily food servings in
Styrofoam cups with plastic lids on them.

322. The manner in which the restraints were
Applied on the plaintiff, coupled with the manner
in which plaintiff's daily meals were packaged
And served with the withholding of any eating
instrument made it impossible for plaintiff to
consume his daily food servings adding to the
pain and suffering, humiliation, embarrassment,
degradation and indignity.

323. Due to the Plaintiff not being able to
consume the appropriate amount of daily food
intake while on the "modified meal Status" he
continuously experienced stomach pains, dizziness,
Acid Reflexes and Recurring headaches And other
Physical complications and bodily pains And
Suffering.

324. Defendant First Shift Kitchen Supervisor is
Responsibile for the Breakfast and lunch food
Service to the Inmate Population here At NCI

87.

325. Defendant Second Shift Kitchen Supervisor John Doe is responsible for the supper food service to the inmate population here at NCI.

326. Both Defendants First and Second Shift Kitchen Supervisors John Doe have personal knowledge of the way the food is served to those inmates on in cell restraints and the deprivation or withholding of any eating instrument.

327. Both Defendants First and Second Shift Kitchen Supervisors John Doe had personal knowledge of the manner in which the Plaintiff food while on "modified meal status" was packaged and served as well as personal knowledge of the withholding of any eating instrument.

328. On May 2, 2010, the Plaintiff filed a complaint with Defendant Chief Kitchen Administrator David Roston regarding the practice of placing inmates including this Plaintiff on "modified meal status" on placed on in cell restraints. On May 6, 2010, Defendant Chief Kitchen Administrator David Roston responded stating: "following Protocol for behavior management and in cell restraints" See exhibit #48

329. The plaintiff on May 7, 2010, Filed A Level-1 grievance regarding the placement of the plaintiff on "modified meal status" on April 23-26, 2010. The Level-1 grievance was denied by Former Warden Defendant Angel Quiros stating: "your grievance regarding unit policy is denied. Based on safety and security issues modifications can be made to any functions of the facility, such as the feeding of restrained inmates As you reference in this grievance". See exhibit # 49

330. On May 29, 2010, the plaintiff submitted A Level 2 Appeal to District Administrator Defendant Michael P. Lajoie Appealing the Level 1 grievance disposition. On July 8, 2010, District Administrator Defendant Michael P. Lajoie denied the Level-2 Appeal upholding the Level-1 disposition stating: "you are Appealing A Level-1 grievance concerning unit policy. As indicated by Warden Quiros in your level-1 grievance, based on safety And security issues, modifications can be made to any function of the facility, such As the feeding of inmates. Your Level 2 Appeal is denied." See exhibit # 50

331. Defendant David Noston First hand knowledge of the unconstitutional practice of placing

89.

inmates including the plaintiff on "modified meal status" while on in cell restraints.

332. The placement of the plaintiff on "modified meal status" from April 23-26, 2010, was solely done to accelerate and aggravate the pain and suffering incidental to the application of in cell restraints itself.

333. Chief Food Service Administrator Defendant David Roston is responsible for the overall operations of the food services here at NCI as well as the training and supervision of any and all the staff members assigned to NCI food services

334. Chief Food Service Administrator Defendant David Roston have and continue to fail to implement any corrective action to cease the practice of his and his subordinate staff members in the participation and/or involvement in the continued torture, corporal punishment and/or cruel and unusual punishment of inmates on "modified meal status" who are placed on in cell restraints.

**G.   REQUEST FOR RELIEF**

[redacted text]

Compensatory, Nominal, and punitive damages
As well as injunctive, declaratory and equit-
able relief and Attoney fees are requested.

**H.   Do you wish to have a jury trial? Yes** ✓ **No____**

**I.   DECLARATION UNDER PENALTY OF PERJURY**

[redacted text]

By signing this complaint, I certify under penalty of perjury that
the information contained in this complaint is true and accurate to
the best of my knowledge.   I understand that if I lie in this
complaint, I may be prosecuted for perjury, and punished with as
much as five (5) years in prison and/or a fine of $250,000.   See 18
U.S.C. Sections 1621, 3571.

Signature: _Alex Alston_

Signed at _Northern Corr. Inst_        on _January 10, 2012_
              **(Location)**                      **(Date)**

[redacted text]