## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

IRA ALSTON,

                Plaintiff,

   v.

LIEUTENANT BELLEROSE,
LIEUTENANT RAMOS, LIEUTENANT
SAYLOR, PAUL GERMOND, MICHAEL
PAFUMI, C.O. JOSEFIAK, C.O.
HARTLEY, C.O. PAGAN, C.O. ALCIDES
SANTIAGO, C.O. PRIOR, C.O. KIDD, C.O.
CIEBOTER,

              Defendants.[1]

3:12 - CV - 00147 (CSH)

**July 23, 2015**

**HAIGHT,** Senior District Judge:

### OMNIBUS RULING ON PENDING MOTIONS

In this civil rights action pursuant to 28 U.S.C. §§ 1983 and 1988, the *pro se* plaintiff Ira

Alston, now a prisoner at Northern Correctional Institution in Somers, Connecticut, claims that

Defendants, employees of the Connecticut Department of Corrections, violated his constitutional

rights by placing him on "in-cell restraint status" for three consecutive days in April of 2010.  In a

Ruling dated December 31, 2014, the Court granted Defendants' motion to dismiss the claims

---

[1] In addition to the defendants named in the caption, the operative complaint, doc. [51], names John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5 as defendants.  In an Order, dated June 4, 2012, the Court stated that it is "unable to effect service on a defendant named only as John or Jane Doe," and directed Plaintiff to "identify all defendants in the case caption" and to "provide the . . . current work addresses of all defendants."  Doc. [5] at 1-2.  The Court reiterated the directive in subsequent Orders.  *See* Doc. [15] at 15; Doc. [27].  As over three years has past since the Court issued that first directive and Plaintiff has failed to identify those defendants, the Court dismisses the action against all "Doe" defendants pursuant to Fed. R. Civ. P. 4(m), without prejudice to Plaintiff's right to file a motion joining those individuals as defendants, should their identities be revealed through discovery.  *See* Fed. R. Civ. P. 20(a)(2).

asserted against them in their official capacities.  Defendants, with the Court's permission, have since moved pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss the claims asserted against them in their *individual* capacities.  Plaintiff has moved for reconsideration of the Court's December 31 Ruling.  The parties have also collectively filed a series of motions related to discovery practice and case management.  This omnibus Ruling decides all pending motions.

**I**

The following well-pleaded facts, derived from plaintiff's amended complaint, doc. [51], are accepted as true for purposes of this Ruling.

In March and April of 2010, Plaintiff filed various "grievances or complaints," against Germond, Kidd, Prior, Santiago, and Saylor, prison officials at Northern Correctional Institution. Doc. [51] at ¶ 14.  According to Plaintiff, those grievances motivated Defendants to retaliate against Plaintiff in late April 2010, by relegating him to "in-cell restraint status," a designation in prison parlance for a period of detention marked by an inmate's in-cell confinement while constrained by manacles on the hands and legs.

The events culminating in Plaintiff's punishment began, innocently, with a question.  On the morning of April 23, while conducting the "breakfast feeding" in the upper tier housing unit, Correctional Officer Kidd asked Plaintiff, do you "want any coffee?"  *Id.* at ¶¶ 16-17. As far as can be gleaned from the complaint, it was not the question that offended Plaintiff, so much as how Kidd asked it.  For the complaint avers that Kidd posed the inquiry while "wip[ing] his nose with his left hand."  *Id.* at ¶ 17.  His sensibilities offended, "Plaintiff took issue with . . . Kidd wiping [*sic*] his nose and passing out breakfast without any gloves or hairnet," *id.* at ¶ 18, and advised Kidd "that his actions would be reported to his supervisor," *id.* at ¶ 19.  Kidd, for his part, was indignant.  He

2

"became very angry, hostile, threatening and verbally abused toward the plaintiff." *Id.* at ¶ 20.  The breakfast hour nevertheless concluded without further altercation, and Plaintiff retired to his cell.

Later that morning, Correctional Officer Alcides Santiago came to Plaintiff's cell in order to escort Plaintiff to the west outdoor exercise area for one hour of scheduled out-of-cell exercise. The following exchange between prisoner and prison official happened:

> Santiago: "'Are you going outside?'"
>
> Plaintiff: "'Yes.'"
>
> Santiago: "'Okay, you know the routine homo, strip down, spread
> your ass crack, cough, all that!'"

*Id.* at ¶ 22.  Offended by Correctional Officer Santiago's blue language, Plaintiff "informed . . . Santiago . . . that such conduct would be reported to his supervisors." Santiago responded to Plaintiff's threat with this ominous retort: "'[I] do not care about any of that because [you] will be taken care of today.'" *Id.* at ¶ 24.  Santiago then escorted Plaintiff, to the rear exercise yard, the smallest of the three exercise yards in the west housing unit.

After Plaintiff complained about being placed in the smallest of the three exercise yards, "Santiago stepped on the chain to the leg irons" that bound Plaintiff, and "smashed his left elbow into the lower part of Plaintiff's back." *Id.* at ¶ 36.  "'You got a big fucking mouth,'" said Santiago, "'one day I am going to really fuck you up!'" *Id.* at ¶ 37.

By the time correctional officers Cieboter and Kidd entered the exercise area, Santiago had Plaintiff "pinned against the fence." *Id.* at ¶¶ 39-40.  Santiago explained that Plaintiff had complained about his placement in the rear exercise yard and informed Kidd that Plaintiff had "wrote him [Santiago] up a few weeks ago." *Id.* at ¶ 41.  Moments later, Lieutenant Bellerose

arrived and asked the officers if the exercise hour should be terminated early and Plaintiff returned to his cell. *Id.* at ¶ 44. Santiago responded in the affirmative, and the officers proceeded to escort Plaintiff up the west B stair case.

Lieutenant Pafumi, a named defendant in a prior and unrelated litigation, *Alston v. Pafumi*, 3:09 cv 1978 (CSH), intercepted that procession of prisoner and prison officials. Pafumi expressed his regret that he "'missed the fun,'" *id.* at ¶ 46, and recommended to Lieutenant Bellerose "to put the plaintiff on in cell restraint status since the plaintiff like[s] to sue us," *id.* at ¶ 47. Either inspired by the idea, or the thought born of his own design, Bellerose asked Kidd and Santiago if Plaintiff was "'actively resisting to necessitate in-cell restraint placement.'" Santiago replied in the negative, but Kidd insisted that Plaintiff was, in fact, "'actively resisting.'" *Id.* at ¶¶ 49-50.

Plaintiff was escorted to cell #102, where Lieutenant Bellerose and correctional officers Cieboter, Kidd, Josefiak, Prior and Santiago performed a strip search on Plaintiff, and where the officers, at Bellerose's direction, fitted Plaintiff with the "'modified restraints'" designated for in-cell restraint placement. *Id.* at ¶ 64. The modified restraints were comprised of handcuffs and leg irons with a tether chain running between. In order to add to Plaintiff's discomfort, Correctional Officer Prior wrapped the tether around the handcuffs three times so that the Plaintiff was left bent at the waist and his ankles made cut, swollen and bruised by the pressure of the leg irons and the tension of the shortened tether. *Id.* at ¶ 69. Despite "first hand knowledge that the restraints were unnecessarily too tight," Bellerose "did not cause the restraints to be adjusted." *Id.* at ¶ 78.

"At no time during the escort to cell #102 or during the in cell restraint placement was the plaintiff non-compliant, threatening, combative, assaultive, or resisting staff." *Id.* at ¶ 55. Nor was he "attempting to commit suicide or attempting to escape from custody." *Id.* at ¶ 56. In fact,

4

Plaintiff's placement on in-cell restraint status served no "legitimate penological interest"; rather, was done simply "for a punitive and/or retaliatory purposes." *Id.* at ¶ 79.

Over the course of the next three days, various individual defendants acted in concert to further retaliate against Plaintiff by prolonging the duration of his in-cell restraint confinement. Pursuant to prison rule and policy, a "restraint checklist" was "generated in connection with each shift Plaintiff remained on in cell restraints." *Id.* at ¶ 89. Correctional officers, including Cieboter, Hartley, and Pagan, falsified the restraint checklist by reporting that "Plaintiff was exhibiting disruptive behavior by yelling, spitting, or beating on the cell door and cursing." *Id.* at ¶ 91. They did this "for the sole purpose of conspiring with . . . Lieutenant Pafumi . . . Lieutenant Germond . . . Lieutenant Ramos . . . Lieutenant Saylor and . . . Lieutenant Bellerose . . . to continue the Plaintiff on in cell restraint status un-necessarily." *Id.* at ¶ 94.

Cell conditions made the confinement all the more intolerable. Cell #102 "was dirty, filthy . . . [and] unsanitary," *id.* at ¶ 61, and "stunk of a foul odor," *id.* at ¶ 62. The sink, and the toilet, which could only be flushed by a button outside the cell, "were encrusted with slime, dirt and human excrement." *Id.* at ¶¶ 61-62. "[T]he cell door window was defaced to the point one could barely see inside," *id.* at ¶ 61, and the cell "light remained on 24 hours a day," *id.* at ¶ 63.

Moreover, over the course of the next three days, Plaintiff's repeated requests to have his hand and leg restraints loosened were ignored by prison officials. Plaintiff, on at least six occasions, informed lieutenants Bellerose, Germond, Pafumi, Ramos, or Saylor that the restraints were "too tight" or "causing pain, injury and un-necessary suff[e]ring." *Id.* at ¶ 100; *see also id.* ¶¶ 104, 109, 112, 117, 118. The lieutenants refused to adjust the restraints until Plaintiff was released from in-cell restraint status at approximately 7:30 AM on April 26. *Id.* at ¶ 88. This lawsuit followed.

5

On January 31, 2012, Plaintiff filed a complaint in this Court pursuant to 28 U.S.C. §§ 1983 and 1988, seeking redress for violations of his constitutional rights stemming from his confinement on in-cell restraint status.  On May 15, 2013, in accordance with 28 U.S.C. § 1915A, the Court issued an Initial Review Order, which pared down the complaint to Plaintiff's principal claims that Defendants conspired to deprive him of his civil rights, subjected him to unconstitutional conditions of confinement and excessive force, and retaliated against him for complaints or grievances he filed against various individual defendants.  On March 3, 2014, Defendants moved pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, to dismiss the complaint against them in their official capacities.  In a Ruling dated December 31, 2014, the Court granted the motion as to all claims against the Defendants in their official capacities, and stated that Defendants could file a motion to dismiss directed at the claims asserted against them in their individual capacities.  Doc. [64] at 6.

The instant motions followed.

## II

### A.     <u>Motion for Reconsideration</u>

We turn first to Plaintiff's motion for reconsideration of the Court's December 31 Ruling granting Defendants' motion to dismiss the claims asserted against them in their official capacities. The portions of the operative complaint dismissed by the Court included Plaintiff's claims against Defendants in their official capacities for monetary damages and declaratory and injunctive relief. With respect to Plaintiff's claims against Defendants in their official capacities for monetary damages, the Court dismissed those claims on the ground that the Eleventh Amendment divests the Court of subject matter jurisdiction over any claim for monetary damages against a state actor acting in his official capacity. *See Kentucy v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that,

6

absent a waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.").  Plaintiff does not ask the Court to reconsider that conclusion; rather, only requests reconsideration of the Court's denial of his claims against the Defendants in their official capacities for declaratory and injunctive relief.  With respect to those claims, we noted that the complaint failed to specify just what kind of declaratory and injunctive relief Plaintiff was seeking.  Then we stated:

> An inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.  *See Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed").

> Court records reveal that Plaintiff now is confined at MacDougall-Walker Correctional Institution.  The incidents underlying this action occurred while the plaintiff was confined at Northern Correctional Institution.  Thus, the claims for declaratory and injunctive relief are moot.  Defendants' motions to dismiss are granted as to these claims.

Doc. [64] at 5-6.  In his motion for reconsideration, Plaintiff explains that though he was "confined at MacDougall-Walker C.I." "[a]t the time the Court issued its [December 31] Ruling," he has since been "transferred back to" Northern Correctional Institution — "the very institution where the incidents in this action occurred."  Doc. [71] at 2.  Defendants object to Plaintiff's motion for reconsideration on grounds that he "fail[s] to specify the nature and scope of the declaratory and injunctive relief" and "does not articulate any facts about his current housing at Northern Correctional Institution that relate back to his lawsuit and otherwise involve activity that would need to be addressed via injunctive relief."  Doc. [75] at 1 (footnote omitted).  In his reply to Defendants' objection, Plaintiff notes that the Court's pleading form "did not call for the specification of the relief

requested," and explains that he did not specify the nature of declaratory and injunctive relief sought "because he did not know such specification w[as] required a the pleading [l]evel."  Doc. [77] at 2. Plaintiff asks permission to file another amended complaint in order to specify the nature of the injunctive and declaratory relief for which he prays.  He does not state what relief that may entail in his moving papers.

The standard governing a motion for reconsideration is strict.  *See Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Such a motion generally will be denied unless the "moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Id.  See also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992), cert. denied, 506 U.S. 820 (1992) ("The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'") (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790); *Lo Sacco v. City of Middletown,* 822 F.Supp. 870, 876–77 (D.Conn.1993) ("[The function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence.'") (quoting *Bothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987)); *Rand–Whitney Containerboard Ltd. Partnership v. Town of Montville*, No. 396–CV–413 (HBF). 2005 WL 2416094, at *1 (D. Conn. Sept. 30, 2005) ("Generally, the three grounds justifying reconsideration are 1) an intervening change of controlling law; 2) the availability of new evidence; or 3) the need to correct a clear error or prevent manifest injustice.") (emphasis added).  A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Here, Plaintiff had until January 14, 2015, to file a motion for reconsideration of the Court's December 31 Ruling. Plaintiff's motion for reconsideration, filed April 1, 2015, was eleven weeks late. Doc. [71]. In the way of an explanation for the dilatory filing, Plaintiff represents that he did not have a reason to file the motion for reconsideration until he was "transferred back" to Northern on January 30, 2015. Doc. [71] at 2-3. Although this fact accounts for why Plaintiff did not immediately move for reconsideration of the Court's December 31 Ruling, it does not explain why Plaintiff waited another two months to file the instant motion. Plaintiff's motion for reconsideration is therefore untimely.

The more fundamental problem with Plaintiff's request for injunctive relief, however, is that the alleged deprivation of his constitutional rights, which stem from a discrete incident that occurred over five years ago, is not an ongoing irreparable harm that can be redressed by the award of an injunction. Nor is declaratory relief appropriate. "Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great damages." *Ziemba v. Lajoie*, No. 3:11 cv 845 (SRU), 2012 WL 4372245, at *3 (D. Conn. Sept. 24, 2012) (citing *In re Combustible Equip. Assoc.*, 838 F.2d 35, 37 (2d Cir.1988)). Declaratory relief operates prospectively, and is inappropriate for past acts because all damages have accrued. *Id.* Therefore, any injury suffered by Plaintiff from Defendants' alleged misconduct cannot be redressed by a declaratory judgment. Should Plaintiff's claims survive Defendants' motion to dismiss, any relief to which Plaintiff may be entitled will come in the form of monetary damages, if, at trial, he proves Defendants liable in their individual capacities. Plaintiff's motion for reconsideration will therefore be denied.

We turn next to Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims asserted against them in their individual capacities.

9

**III**

A.      **Motion to Dismiss Claims Directed at Defendants' in their Individual Capacities**

Liberally construed, Plaintiff's amended complaint, doc. [51], asserts claims for (1) retaliatory punishment, (2) conspiracy, and (3) unconstitutional conditions of confinement and excessive force.  Defendants argue that the complaint does not allege sufficient facts to demonstrate plausible claims for relief, and that they are, in any event, entitled to qualified immunity.  Plaintiff argues that the instant motion to dismiss is untimely filed, that he has alleged sufficient facts to support a claim upon which relief can be granted, and that the qualified immunity defense is not available to Defendants.

When considering a motion to dismiss filed pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003).  The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.

2009) (quoting *Iqbal*, 556 U.S. at 678).  Second, to survive a motion to dismiss, the complaint must

state a plausible claim for relief.  Determining whether the complaint states a plausible claim for

relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Even under this standard, however, the

court liberally construes a *pro se* complaint.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14, 216 (2d Cir. 2008).

   At the threshold, Plaintiff opposes the motion to dismiss as untimely filed.  He argues that,

pursuant to Rule 12(c)(4)(A), Defendants were required to file this second motion to dismiss within

ten days of the Court's December 31 Ruling.  Rule 12(c) has no subparts.  The Court assumes that

the Plaintiff intended to cite Rule 12(a)(4)(A), which provides that if the court denies a motion to

dismiss, a responsive pleading must be served within fourteen days after notice of the court's action.

Fed. R. Civ. P. 12(a)(4)(A).  The responsive pleading normally would be an answer.  *See* Fed. R.

Civ. P. 7.  Here, however, the Court, without setting a deadline for doing so, specifically allowed

Defendants to file a motion to dismiss the claims asserted against them in their individual capacities.

The time-limitation imposed by Rule 12(a)(4)(A) is therefore not applicable in this context.

   We nevertheless acknowledge that more than four months past between our December 31

Ruling and Defendants' instant motion to dismiss.  While we do not condone Defendants' dilatory

conduct, we acknowledge that the Court played some role in the delayed filing by neglecting to set

a deadline for the filing of the motion.  We also note that we have been equally generous with

deadlines in this case pertaining to Plaintiff; granting, for instance, several motions of extension of

time, docs. [7], [9], and [50], and authorizing Plaintiff to amend his complaint to name additional

parties, doc. [42].

The Court will consider Defendants' motion to dismiss on its merits.

## B.     Retaliation in Violation of the First Amendment

Plaintiff first contends that in retaliation for the complaints or grievances he filed against Cieboter, Germond, Kidd, Prior, Santiago, and Saylor in March and April of 2010, Defendants punished Plaintiff by placing him on in-cell restraint status and falsifying an "in-cell restraint checklist" in order to prolong that punishment.   We construe those allegations as a claim for retaliation in violation of the First Amendment of the United States Constitution.

We note at the outset that in his opposition to Defendants' motion to dismiss, Plaintiff states expressly that he does "not intend to sue Defendants Ramos, [H]artley or Pagan in this Action for retaliation."  Doc. [78] at 11; *see also id.* at 25.  Accordingly, the motion of Ramos, Hartley and Pagan to dismiss Plaintiff's retaliation claim against them will be granted.

To sustain a First Amendment retaliation claim against the remaining Defendants, Plaintiff must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  "Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act.'"  *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d at 491).  Since the filing of complaints or grievances is a constitutionally protected activity, Plaintiff meets the first prong of this test.  *See id.*

With respect to the second element, "'[o]nly retaliatory conduct that would deter a similarly situated individual of ordinarily firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation.'" *Id.* (quoting *Dawes v. Walker*, 239 F.3d at 493). This is an "objective test" that "applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citing *Davis v. Goord*, 320 F.3d at 353). Here, Plaintiff alleges that was placed on in-cell restraint status for a period of three days. That allegation is a classic example of adverse action. *Gill v. Pidlypchak*, 389 F.3d at 383 ("In the prison context, the harm could include such an adverse action as placing a plaintiff in keeplock for a period of weeks."); *cf Dawes v. Walker*, 239 F.3d at 493-493 (noting that "*de minimis*" retaliation, like verbal harassment from a prison guard, falls "outside the ambit of constitutional protection"). Apart from his confinement on in-cell restraints, the complaint's allegations of excessive force — that Santiago tripped Plaintiff and smashed his elbow into him, and that Defendants secured the in-cell restraints too tightly — constitute independent allegations of adverse action. *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (construing prison officials' use of excessive force as adverse action in context of a First Amendment retaliation claim).

In examining the complaint's allegations of adverse conduct, we must discern the individual actions of each Defendant. "Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983," and "a prerequisite to an award of damages." *Kemp v. LeClaire*, No. 03 cv 844S, 2007 WL 776416, at *6 (W.D.N.Y. Mar. 12, 2007) (citations omitted). "The Second Circuit construes personal involvement in this context to mean 'direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under

which unconstitutional practices occurred, or gross negligence in managing subordinates.'" *Id.*
(quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996)); *see also Wright v. Smith*, 21 F.3d 496,
501 (2d Cir.1994).  Here, the complaint alleges that each one of the twelve Defendants took some
adverse action against Plaintiff.  The complaint alleges, *inter alia*: that Santiago tripped Plaintiff and
smashed his elbow into his back, doc. [51] ¶ 36; that Kidd misrepresented Plaintiff's conduct by
stating to Bellerose that Plaintiff was "actively resisting," *id.* ¶¶ 50, 55, 56; that Bellerose, Ciebtor,
Josefiak, Kidd, Prior, and Santiago stripped searched Plaintiff and placed him in the modified
restraints, *id.* at ¶ 54; that Prior intentionally shortened the tether chain to cause Plaintiff pain and
discomfort, *id.* at ¶ 59; that Pafumi recommended Plaintiff for in-cell restraint confinement and
conspired with others to prolong Plaintiff's confinement on in-cell restraints, *id.* at ¶¶ 47, 94; and that
lieutenants Bellerose, Germond, and Saylor ignored Plaintiff's complaints that the restraints were
too tight, *id.* at ¶¶ 100, 104, 109, 112, 117, 118.  The complaint therefore sufficiently alleges, for
present purposes, that each Defendant, acting alone, took objectively adverse action against Plaintiff,
which would deter a similarly situated individual of ordinary firmness from exercising his
constitutional rights.

With respect to the third element, that is, whether there is a causal connection between the
protected speech and the adverse action, the "causal connection must be sufficient to support the
inference 'that speech played a substantial part [in the adverse action].'" *Diesal v. Town of
Lewisboro*, 232 F.3d 92, 102 (2d Cir. 2000) (quoting *Ezekwo v. NYC Health & Hosps. Corp.*, 940
F.2d 775, 780-91 (2d Cir. 1991)).  In that regard, "a court may consider a number of factors,
including 'any statements made by the defendant concerning his motivation' and 'the temporal
proximity between the protected activity and the defendant's adverse action.'" *Williams v. Muller*,

14

98 Civ. 5204 (LTS) (AJP), 2001 WL 936297 at *3 (S.D.N.Y. Aug. 17, 2001); *Tirado v. Shutt*, No. 13 Civ. 2848 (LTS) (AJP), 2015 WL 774982, at *8 (S.D.N.Y. Feb. 23, 2015); *see Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009). Here, Plaintiff alleges that he was confined on in-cell restraint status from April 23, 2010 to April 26, 2010, and that shortly before, at sometime earlier in April, or in March, he field complaints or grievances against five of the individual defendants in this case. The complaint also includes allegations regarding Defendants' retaliatory motivation. Plaintiff alleges that in the context of the incident giving rise to this litigation, Santiago stated, "'you got a big fucking mouth, you complain about everything, one-day I am going to really fuck you up!'" *Id.* at ¶ 37. Plaintiff also avers that Santiago subsequently indicated to Kidd that Plaintiff "had wrote [Santiago] up a few weeks ago." *Id.* at ¶ 41. Plaintiff alleges that thereafter, when he was being escorted to cell #102, Lieutenant Pafumi told Lieutenant Bellerose that Plaintiff should be "put . . . on in cell restraint status since the plaintiff like[s] to sue us." Doc. [51] at ¶ 47.

In support of their motion to dismiss, Defendants argue that Plaintiff's retaliation claim should fail as a matter of law because Plaintiff has not alleged that he filed complaints or grievances against Bellerose, Ramos, Josfiak, Hartley, and Pagan, specifically, or alleged that many of the Defendants even knew about the complaints or grievances filed against Cieboter, Germond, Kidd, Prior, Santiago, and Saylor. The complaint alleges that in the context of the events culminating in Plaintiff's relegation to in-cell restraint status, Santiago and Pafumi made statements to other officers concerning Plaintiff's litigiousness. We think that at this stage in the proceedings, those allegations support the inference that the named Defendants in this action were generally aware of Plaintiff's participation in a protected activity, and that consequently, Plaintiff has stated a plausible claim for retaliation. Evidence, adduced through discovery, may suggest a contrary conclusion with respect

15

to some or all of the Defendants.  Should that be the case, Plaintiff's retaliation claim would be fit for summary disposition against those defendants.  *See, e.g., Tirado v. Shutt*, 2015 WL 774982 at *10 (collecting cases where  motion for summary judgment was granted where plaintiff failed to establish that defendants retaliated against plaintiff for filing grievances not naming those defendants).  We note also that there is no *per se* rule of law standing for the proposition that a retaliation claim may only be sustained against individual defendants against whom grievances were filed.  *See, e.g.*, *Espinal v. Goord*, 558 F.3d 119, 122-30 (2d Cir. 2009) (denying summary judgment on grounds that jury could reasonably conclude that defendant correction officer participated in a retaliatory beating of an inmate because of the inmate's prior lawsuit against *other* correctional officers, where officer stated "this is what happens to [i]nmates when they submit law suits against.").  Therefore, Defendants' motion to dismiss Plaintiff's retaliation claim will be denied against those officers other than Ramos, Hartley, and Pagan whom Plaintiff did not intend to sue for retaliation.

C.     **Eighth Amendment Violations**

Plaintiff also claims that he was subjected to "cruel and unusual punishment" in violation of the Eighth Amendment.  Liberally construed, the complaint alleges Eighth Amendment violations based on separate theories of unconstitutional conditions of confinement and the use of excessive force.  It is well-settled that the use of excessive force and the conditions of a prisoner's confinement can give rise to an Eighth Amendment violation.  *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Hudson v. McMillian*, 503 U.S. 1 (1992).  To state an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate must allege facts demonstrating failure of prison officials to provide for the inmate's "basic human needs — e.g., food, clothing, shelter, medical care, and

reasonable safety." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).  An

inmate may prevail on an Eighth Amendment claim based on unconstitutional conditions claim

"only where he proves both an objective element — that the prison officials' transgression was

'sufficiently serious' — and a subjective element — that the official acted, or omitted to act with a

'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or

safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511

U.S. at 834).  A condition is objectively serious if it "'pose[s] an unreasonable risk of serious damage

to [a prisoner's] future health.'"  *Id.* (*Helling v. McKinney*, 509 U.S. at 32 ).  Thus, the "[t]he

objective component relates to the seriousness of the injury."  *Davidson v. Flynn*, 32 F.3d 27, 29 (2d

Cir. 1994).  To meet the subjective requirement, a plaintiff must assert that the prison officials knew

"of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of

facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and

. . . dr[ew] that inference."  *Id.*  at 185-86.

Prisoners have no right to be housed in comfortable surroundings.  Restrictions do not violate

the Eighth Amendment unless they are "totally without penological justification," "grossly

disproportionate," or "involve the unnecessary and wanton infliction of pain."  *Rhodes v. Chapman*,

452 U.S. 337, 346 (1981).  "To the extent that such conditions are restrictive and even harsh, they

are part of the penalty that criminal offenders pay for their offenses against society."  *Id.* at 347.

We construe the complaint as citing the following allegations in support of Plaintiff's Eighth

Amendment claim for unconstitutional conditions of confinement: (1) the cell where he was placed

on in-cell restraint status was unsanitary and odorous, (2) the toilet to that cell could only be flushed

by pushing a button on the outside of the cell, (3) the window was dirty, and (4) the lights of the cell

remained on 24 hours a day.  These allegations fail to meet both the objective and subjective components to the deliberate indifference standard.  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), *cert. denied sub nom*. *Foote v. Hathaway*, 513 U.S. 1154, (1995).

Though Plaintiff alleges that he was placed in an unsanitary and odorous cell, which was furnished with a toilet that could only be flushed from the outside, a dirty window, and lights that remained on 24 hours a day, Plaintiff does not allege that he sustained an injury from those conditions, let alone an objectively serious one.  *See Hathway v. Coughlin*, 99 F.3d at 553 (to be objectively serious, the condition must produce death, degeneration or extreme pain).  Indeed, it is difficult to image that Plaintiff's exposure to such conditions for a period of only three days resulted in such an injury.  *See, e.g., Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (allegation that pretrial detainee was subjected to raw sewage for four days because of inoperative toilet did not rise to the level of constitutional violation); *Allebach v. Sherrer*, No. Civ. 04-287, 2005 WL 1793726, at *3-4 (D.N.J. Jul. 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the telephone, mattress and clothing for thirty-six days did not violate the Eighth Amendment); *Alston v. Butkiewicus*, No. 3:09 CV 207 (CSH), 2012 WL 6093887, at *9-10 (D. Conn. Dec. 7, 2012) (Plaintiff's allegation that he was unable to use toilet when confined on in-cell restraints and that cell had urine, feces and blood smeared on the walls, sink and bunk did not rise to the level of Eighth Amendment violation).

The complaint also fails to meet the subjective component of the deliberate indifference standard.  "Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions." *Alston v. Butkiewicus*, 2012 6093887 at *15 (citing *Salahuddin v. Good*, 467 F.3d 263, 279-80 (2d Cir. 2006).  The complaint

does not allege that Plaintiff was exposed to some substantial risk of harm and therefore does not allege that Defendants were aware of that risk.

In support of Plaintiff's claim for excessive force, he alleges that the restraints were secured too tightly, causing him "pain, injury and un-necessary suff[e]ring." Doc. [51] at ¶ 100. Unlike a plaintiff asserting an Eighth Amendment claim based on unconstitutional conditions of confinement and deliberate indifference who in addition to meeting the subjective component must show an objectively serious injury, an inmate asserting an Eighth Amendment claim for excessive force need only show that the force used was more than *de minimis* or was repugnant to the conscience of mankind and that the defendant acted with a sufficiently culpable state of mind. *United States v. Walsh*, 194 F.3d 37, 48-50 (2d Cir. 1999). Here, the complaint alleges that Defendants acted with the requisite state of mind by alleging "a retaliatory (and hence wanton) motive." *Davidson v. Flynn*, 32 F.3d at 30. The complaint also alleges that the too-tight cell restraints caused Plaintiff pain, injury and unnecessary suffering, allegations which imply that Defendants' use of force was more than *de minimis*. We therefore conclude that Plaintiff has stated a claim for excessive force in violation of the Eighth Amendment.

## C.    Conspiracy to Violate Plaintiff's Constitutional Rights

Finally, Plaintiff alleges that Defendants conspired to prolong the duration of his in-cell restraint status. Doc. [51] at ¶ 94. To survive a motion to dismiss, a conspiracy claim under 42 U.S.C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act or omission was committed in furtherance of that goal. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "In

addition, to make out a conspiracy action under section 1983, the plaintiff must allege an underlying denial of his constitutional rights." *McCloud v. Park*, 55 F. Supp. 3d 478, 483 (W.D.N.Y. 2014); *see also Romer v. Morgenthau*, 119 F. Supp. 346, 363-64 (S.D.N.Y. 2000) ("[I]f a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim for conspiracy to violate those rights.").

The portion of the complaint alleging that Defendants conspired against Plaintiff to prolong the duration of his in-cell restraint status, does not expressly identify a constitutional right that Defendants allegedly violated.  Read in context, however, we construe the complaint liberally as asserting claims for unlawful conspiracy in violation of Plaintiff's (1) First Amendment right to be free from retaliatory conduct, and (2) Eighth Amendment right to be free from cruel and unusual punishment. In analyzing the conspiracy claims, the Court is mindful that a "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 708 F.2d 173, 175 (2d Cir. 1983); *see also Oster v. Aronwald*, 567 F.2d, 553 (2d Cir. 1977) ("Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct").

The portion of the complaint supporting Plaintiff's civil conspiracy claims do not include well-pleaded facts of the involvement of Josefiak, Kidd, and Santiago in any conspiracy to violate Plaintiff's civil rights by prolonging his in-cell restraint status.  Accordingly, Defendants' motion to dismiss Plaintiff's civil conspiracy claims will be granted as to Josefiak, Kidd, and Santiago.  Also, because Plaintiff has expressly stated that he did not intend to sue Hartley, Pagan, and Ramos for retaliation, the conspiracy to retaliate claim will be granted as to those Defendants.  Therefore, with respect to Hartley, Pagan, and Ramos, the Court will only consider whether the complaint alleges

they engaged in a conspiracy to violate Plaintiff's rights under the Eighth Amendment.

With respect to those Defendants other than Josefiak, Kidd, and Santiago, the complaint, under a subheading captioned "Retaliatory and Punitive Continuances on In Cell Restraint Status," alleges the following: that Cieboter, Hartley, and Pagan  prepared an "in cell restraint checklist," doc. [51] at ¶ 90, "for the sole purpose of conspiring with . . . Pafumi . . . Germond . . . Ramos . . . Saylor and . . . Bellerose to continue Plaintiff on in cell restraint status un-necessarily," *id.* at ¶ 94; that Pafumi, Germond, Ramos, Saylor, and Bellerose "did inform" Cieboter, Hartley, and Pagan "that the if they record[ed] on the in cell restraint checklist that the plaintiff was behaving disruptively that the plaintiff would be continued on in cell restraint status," *id.* at ¶ 95; and that Cieboter, Hartley, and Pagan "did have first hand knowledge that if they were to record on [the] in cell restraint checklist that Plaintiff was misbehaving that information would be use[d] to continue the Plaintiff on in cell restraint status by Bellerose . . . Germond . . . Pafumi . . . Ramos and . . . Saylor," *id.* at ¶ 96.   These allegations sufficiently allege that an agreement existed between Cieboter, Hartley, Pagan, Bellerose, Germond, Pafumi, Ramos and Saylor to act in concert in order to violate Plaintiff's constitutional rights.

With respect to acts or omissions in furtherance of that conspiracy, the complaint goes on to allege: that Cieboter, Hartley, and Pagan, as the officers tasked with preparing the in-cell restraint checklist, "reported on the . . . in cell restraint checklist that Plaintiff was exhibiting disruptive behavior by yelling, spitting, or beating on the cell door and cursing," *id.* at ¶ 91; that Ciebtoer, Hartley and Pagan, "created the in cell restraint checklist in a fashion so highly misleading it amounted to falsity," *id.* at  ¶ 93; that Saylor, "on April 23, 2010, during the second shift hours . . . . continued Plaintiff on in cell restraint status solely for disciplinary or punitive reasons," *id.* at  ¶

97, and made no "effort to ascertain the physical condition of the Plaintiff," *id.* at ¶ 98; that "Plaintiff informed . . . Bellerose that Plaintiff would like to be removed from the restraints" as they were causing him "pain, injury, and un-necessary suff[e]ring," *id.* at ¶ 100; that "Bellerose denied Plaintiff's request to be removed from the restraints," *id.* at ¶ 101, and "continued the Plaintiff on in cell restraint status solely for disciplinary or punitive reasons," *id.* at ¶ 103; that "Bellerose ignored the Plaintiff['s] complaints about the restraints being much too tight" and "did not . . . check the restraints," *id* at ¶ 104; that Pafumi, "on April 24, 2010 . . . continued the Plaintiff on in cell restraint status for allege[d] non -compliant behavior as recorded on the in cell restraint checklist" and "did not . . . make any effort to ascertain the physical condition of the Plaintiff on in cell restraint status," *id* at ¶ 106; that Saylor, "on April 24, 2010, during the second shift hours . . . continued Plaintiff on in cell restraint status for disciplinary or punitive reasons as recorded on the in cell restraint checklist," *id* at ¶ 107; that Bellerose, "on April 25, 2010, during the third shift hours . . . denied Plainitff['s] request to be removed from the restraints," *id.* at ¶ 108, and did not "investigate Plaintiff's complaint of pain and suffering or cause for the restraints to be adjusted," *id.* at ¶ 110; that Germond, "on April 25, 2010, during the first shift hours at 10[:]30 AM . . . continued Plaintiff on in cell restraint status for allegedly disruptive behavior as recorded on the in cell restraint checklist and reports from the . . . west unit staff," *id* at ¶ 111, and did not "investigate Plaintiff's complaints about pain and suffering," *id.* at ¶ 113, notwithstanding the fact that Plaintiff "informed . . . Germond that the restraints were much too tight and harming him," *id.* at ¶ 112; that Bellerose and Ramos, "On April 26, 2010 . . . denied Plaintiff['s] request to be removed from the restraints," *id.* at ¶ 116, and "ignored the Plaintiff['s] complaints of pain and suffering," *id.* at ¶ 117; and, finally, that "Germond . . . Saylor . . . Bellerose . . . Pafumi [and] . . . Ramos did not have . . .

administrative authority pursuant to CTDOC rule, policy or regulation including administrative directive 6.5 to continue plaintiff on in cell restraint status," *id.* at ¶ 119.

Based on the complaint's allegations that Cieboter, Hartley, and Pagan falsified the in cell restraint checklist, and that Belleorse, Germond, Pafumi, Ramos and Saylor continued Plaintiff on in-cell restraint status or ignored his complaints that the restraints were secured too tightly, the Court concludes that the complaint sufficiently alleges that those Defendants acted (or failed to act) in furtherance of a conspiracy to violate Plaintiff's civil rights.

### D.    <u>Qualified Immunity</u>

Defendants claim that they are entitled to qualified immunity at this stage in the proceedings. Because the "fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial," *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983), a qualified immunity defense in the context of 12(b)(6) motion to dismiss is only available where "the defense is based on facts appearing on the face of the complaint" and "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) (internal quotation marks omitted); *cf Green v. Maraio*, 722 F.2d at 1018-19 (permitting qualified immunity defense where court reporter was shielded by the immunity of the judge whose direction she followed); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) (permitting defense of a fiscal intermediary shielded by official immunity for performing a government function).  *See also Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (permitting Rule 12(b)(6) motion to raise the affirmative defense of res judicata); *Ghartey v. St. John's Queens Hospital*, 869 F.2d 160, 162 (2d Cir. 1989) (permitting Rule 12(b)(6) motion to assert statute of limitations defense).

23

A public official is entitled to the defense of qualified immunity if either "(a) the defendant's actions did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d. Cir. 2001). With respect to the former, the First Amendment right of an inmate to file complaints or grievances against prison officials without suffering retaliation is well-established. *See, e.g.*, *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988). So too is a prisoner's right under the Eighth Amendment to be free from the use of excessive force. *See, e.g.*, *Davidson v. Flynn*, 32 F.3d 27 (2d Cir. 1994). Because the Court must assume at this stage in the proceedings that Defendants' actions were motivated by retaliatory animus, the Court cannot conclude that Defendants' conduct was objectively reasonable. Accordingly, Defendants are not entitled to qualified at immunity at this point in the proceedings.

## IV

We turn next to the series of ancillary motions filed by the parties related to discovery practice and case management. They are introduced, and resolved, *infra*.

## A.   Plaintiff's Motion to Compel Discovery and Defendants' Motion for Protective Order

Plaintiff filed a motion to compel discovery on March 23, 2015, requesting a court order directing Defendants to answer the interrogatories served by Plaintiff on August 4, 2014. In support of that motion, and in accordance with Rule 37 of the District of Connecticut Local Rules, Plaintiff filed a copy of the letter he sent to Defendants' counsel on September 24, 2014, which urged Defendants to answer the interrogatories, as well as a signed affidavit attesting to the fact that Defendants neither responded to the letter nor the discovery request. Defendants did not directly respond to Plaintiff's motion to compel; however, on April 13, 2015, they filed a motion for

protective order, requesting a stay of discovery until their motion to dismiss was decided by the Court.  In light of this Ruling adjudicating the motion to dismiss, Defendants motion for a protective order will be denied as moot.

With respect to Plaintiff's motion to compel answers to his interrogatories, it is well-settled that "'[a] failure to respond or object to a discovery request in a timely manner waives any objection which may have been available.'"  *Cohalan v. Genie Indus.*, *Inc.*, 276 F.R.D. 161, 163 (S.D.N.Y. 2011) (citing *UBS International Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09 cv 4286 (LAK), 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010).  *See Labarbera v. Absolute Trucking, Inc.*, No. 08 cv 4581 (DRH) (AKT), 2009 WL 2496463, at *1 (E.D.N.Y. Aug. 12, 2009) ("It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available."); *Eldaghar v. City of New York Department of Citywide Administrative Services,* No. 02 cv 9151 (KMW) (HBP), 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) ("If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests. . . .  Any other result would . . . completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences."); *see also Doe v. Mastoloni*, —— F.R.D. ——, ——, No. 3:14 cv 00718 (CSH), 2015 WL 2452691, at *3 (D. Conn. May 22, 2015) ("[A] *complete failure* [to respond to a discovery request] strikes at the very heart of the discovery system, and threatens the fundamental assumption on which the whole apparatus of discovery was designed, that in the vast majority of instances, the discovery system will be self-executing.") (emphasis in original; internal quotation marks and citations omitted)).  Moreover, under our local rules, failure to submit a memorandum in opposition to a

25

motion, including a motion to compel discovery, is independently sufficient grounds to grant the motion.  *See* D. Conn. Loc. R. 7(a).  As Defendants have failed to respond to Plaintiff's interrogatories, much less responded directly to the motion to compel, Plaintiff's motion to compel discovery will be granted.

Under Rule 37(a)(5)(A), if a motion to compel is granted the court "*must*, after giving an opportunity to be heard, require a party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," and the Court must *not* order such sanction if (among other reasons) the opponent's "nondisclosure . . . was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii) (emphasis added).  While we acknowledge that as a *pro se* litigant, Plaintiff's "out of pocket expenses may be modest (probably merely duplication and mailing costs)," those expenses are nevertheless "recoverable as [a] discovery sanction."  *Vincent v. House*, No. 07 cv 632A (HBS), 2009 WL 2913912, at *5 (W.D.N.Y. Sept. 4, 2009).

**B.     Motion for Order Directing Defendants to File an Answer to Plaintiff's Second Amended Complaint**

Plaintiff has also moved for a Court order directing Defendants to file an answer to his second amended complaint.  As stated above, the Court granted Defendants leave to file a motion to dismiss that complaint.  The Court has considered the merits of that motion in this Ruling. Accordingly, Plaintiff's motion for an order directing Defendants to file an answer will be denied.

**C.     Motion to Appoint Counsel**

Finally, Plaintiff moves for a court order appointing counsel to represent him in this matter. The Second Circuit has repeatedly cautioned the district courts against the routine appointment of

counsel.  *See, e.g., Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003);

*Hendricks v. Coughlin*, 114 F.3d 390, 396 (2d Cir. 1997).  As a threshold matter, the court must

determine whether the *pro se* plaintiff is indigent, *see* 28 U.S.C. § 1915(d), whether he has made

sufficient efforts to obtain counsel, *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986), and

whether his "position seems likely to be of substance," *id.* at 61.  If those threshold factors are met,

the court will go on to consider whether other requirements are satisfied.  In that case:

> the court should . . . consider the indigent's ability to investigate the
> crucial facts, whether conflicting evidence implicating the need for
> cross-examination will be the major proof presented to the fact finder,
> the indigent's ability to present the case, the complexity of the legal
> issues and any special reason . . . why appointment of counsel would
> be more likely to lead to a just determination.

*Id.* at 61-62.  A court may also consider the general availability of counsel.  *Cooper*, 877 F.2d at 172.

Although Plaintiff has demonstrated that he is indigent and that he has made repeated efforts

to obtain the assistance of counsel, the Court is unable to conclude whether, at this relatively early

stage, Plaintiff's position "seems likely to be of substance." *Hodge*, 802 F.2d at 61.  *See Cooper*, 877

F. 2d at 174 (stating that plaintiff must make "a threshold showing of some likelihood of merit").

The Court of Appeals has explained that "even where the claim is not frivolous, counsel is often

unwarranted where the indigent's chances of success are extremely slim." *Id.* at 171.  As this case

has not progressed beyond the pleading stage, the Court cannot gauge the merits of Plaintiff's claims

on the present record.  Accordingly, Plaintiff's motion to appoint counsel will be denied without

prejudice to his right to re-file that motion at a later stage of litigation.

## VI

Based on the foregoing, the Court makes the following Ruling and Order.

1.  Defendants' Motion to Dismiss [Doc. 72] is DENIED in large part and GRANTED in

small part. It is granted as to the claims for civil conspiracy asserted against Josefiak, Kidd, and

Santiago, and the claims for retaliation and conspiracy to retaliate asserted against Hartley, Pagan,

and Ramos.  It is DENIED in all other respects.

2.  Plaintiff's Motion for Order [Doc. 70] directing Defendants to file an answer is DENIED.

3.  Plaintiff's Motion for Reconsideration [Doc. 71] is DENIED.

4.  Plaintiff's Motion to Compel [Doc. 69] discovery is GRANTED.  Defendants shall serve

answers to Plaintiff's August 4, 2014 interrogatories by not later than **August 24, 2015**.  Also on or

before **August 24, 2015**, Plaintiff may file and serve an affidavit of his expenses incurred in filing

the motion to compel (that is, expenses incurred in connection with Doc. #69, only).  Within

**fourteen days** of service of that affidavit, Defendants may file and serve a response stating why

their failure to respond to Plaintiff's interrogatories should not result in the sanctions prescribed by

Fed. R. Civ. P. 37(a)(5)(A).

5.  Defendants' Motion for Protective Order [Doc. 73] is DENIED as moot.

6.  Plaintiff's Motions to Appoint Counsel [Docs. 80 and 81] are DENIED without prejudice

to Plaintiff's right to file a motion for the appointment of counsel at a later stage of litigation.

7.  In light of the meandering and dawdling course of this litigation to date, a new

SCHEDULING ORDER is set as follows: All discovery shall be completed by September 1, 2015.

Motions for summary judgment may filed on or before October 1, 2015. Trial memoranda will be

filed within 45 days from the Court's Ruling on any motion for summary judgment, or if no such

motion is filed, by November 2, 2015. The case will be trial ready by December 1, 2015, or within

30 days after the filing of the trial memoranda, whichever is later.

It is SO ORDERED

Dated: New Haven, Connecticut
July 23, 2015                                          _/s/ Charles S. Haight, Jr._
                                                      CHARLES S. HAIGHT, JR.
                                                      Senior United States District Judge