UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IRA ALSTON,<br><br>   Plaintiff,<br><br> v.<br><br>LIEUTENANT BELLEROSE,<br>LIEUTENANT RAMOS, LIEUTENANT<br>SAYLOR, PAUL GERMOND, MICHAEL<br>PAFUMI, C.O. JOSEFIAK, C.O.<br>HARTLEY, C.O. PAGAN, C.O. ALCIDES<br>SANTIAGO, C.O. PRIOR, C.O. KIDD, C.O.<br>CIEBOTER, C.O. GLENN WILLIAMS*,<br>C.O. DANIEL STEWART*, C.O. JAMES<br>DELPESCHIO*, C.O. MICHAEL WHITE*,<br>LIEUTENANT DARREN CHEVALIER*,<br><br>   Defendants[1]. | 3:12-cv-147 (CSH)<br><br><br><br>FEBRUARY 11, 2016 |

**HAIGHT**, Senior District Judge:

**SECOND OMNIBUS RULING ON PENDING MOTIONS**

  The background of this *pro se* civil rights action has been detailed extensively in prior orders from the Court. *See* Docs. 15, 82. There is no need to repeat it here. It is for the Court now to resolve the seventeen motions pending before it.

I

**A. Motion for Relief from Order** [Doc. 86]

  Plaintiff moves, pursuant to Fed. R. Civ. P. 60(b)(1) and (6), for the Court to "overturn its

---

 [1] Defendants marked with an "*" were previously identified as John Doe #1 through John Doe #5 in the Second Amended Complaint, the operative pleading. In light of the Court's ruling, *infra* Section I.C., those Defendants will be joined to this action.

Ruling ordering dismissal of Plaintiff's claims for declaratory and injunctive relief." Doc. 86, at 5. The ruling Plaintiff refers to was filed on December 31, 2014. Doc. 64. Plaintiff filed an earlier motion for reconsideration of that ruling on April 1, 2015, arguing, *inter alia* and as it does here, that the Court erred in dismissing Plaintiff's claims for declaratory and injunctive relief. Doc. 71. On July 23, 2015, the Court ruled that Plaintiff's reconsideration motion was untimely and also, in dicta, rejected Plaintiff's arguments on their merits. Doc. 82, at 9. Plaintiff filed the instant motion on August 3, 2015. Doc. 86.

Plaintiff purports to bring his motion pursuant to Fed. R. Civ. P. 60(b). This is in error. Rule 60(b), by its very terms, applies only to "a final judgment, order, or proceeding." This Court's December 31, 2014 ruling was not a final judgment or order. *See* Fed. R. Civ. P. 54(b). Rather, Plaintiff's motion is more properly considered a motion for reconsideration governed by this district's local rules. As the Second Circuit stated in *Harris v. Millington*:

> Rule [60(b)] applies only to final orders and judgments. . . . The district court's entry of judgment, following its grant of summary judgment, was not final because Millington's counterclaim remained pending, and the court did not direct entry of a final judgment pursuant to Rule 54(b). Rule 60(b) [is] therefore inapplicable to the motion, which we construe as having been brought under the district court's Local Rule [governing reconsideration motions].

613 F. App'x 56, 58 (2d Cir. 2015); *see also City of West Haven v. Liberty Mut. Ins. Co.*, 1989 WL 190242, at *6 n.3 (D. Conn. June 1, 1989) ("[D]efendant has erred in seeking relief under Rule 60(b), as judgment is not final with respect to Count One or any other claims. *See* Rule 54(b). Defendant's request is more appropriately construed as a motion for reconsideration.").

Local Rule 7(c)(1) requires that a motion for reconsideration be filed within fourteen days

2

from the order from which relief is sought. Plaintiff filed his motion 215 days after the ruling from which he seeks relief. Therefore, like his previous motion for reconsideration, it is untimely.

 Moreover, Plaintiff's motion is meritless. As stated in the Court's previous denial of his earlier reconsideration motion: "The standard governing a motion for reconsideration is strict . . . Such a motion generally will be denied unless the 'moving party can point to controlling decisions or data that the court overlooked.'" Doc. 82, at 8 (quoting *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). In its previous order, the Court held that

> the alleged deprivation of his constitutional rights, which stem from a discrete incident that occurred over five years ago, is not an ongoing irreparable harm that can be redressed by the award of an injunction. Nor is declaratory relief appropriate. 'Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great damages.'

*Id.* at 9 (quoting *Ziemba v. Lajoie*, 2012 WL 4372245, at *3 (D. Conn. Sept. 24, 2012)). Plaintiff makes no citation to any overlooked authority that would bring that analysis into question, nor could he. Plaintiff's only citations are ti the Declaratory Judgment Act, 28 U.S.C. § 2201, which simply states that a court "may" issue a declaratory judgment and in no way requires one as to the present facts, and *Powell v. McCormack*, 395 U.S. 486, 499 (1969), which simply reiterates the same principle.

 Nor does Plaintiff raise any new authority calling into question the Court's rejection of his argument that the Court erred in finding moot his request for declaratory and injunctive relief. Further, assuming *arguendo* that the Court did err in discussing mootness where no mootness argument was presented to it, the Court's central holding was the one reiterated just above: Plaintiff is not entitled to declaratory or injunctive relief as a matter of law. That ground was, and remains,

an independently sufficient ground for dismissal. Plaintiff's motion is denied.

**B.   Motion for Courtesy Copy and to Withdraw** [Docs. 90, 94]

On August 20, 2015, Plaintiff requested a "courtesy copy of the Second Amended Complaint, Initial Review Order, and Document ## 43-87 of the court's file." Doc. 90, at 1. Plaintiff moved to withdraw this motion on September 4, 2015. Doc. 94. The Court grants Plaintiff's motion to withdraw, and denies as withdrawn his earlier motion. The Clerk is directed to close both motions.

**C.   Motion for Joinder of John Doe Defendants** [Doc. 95]

Plaintiff moves for joinder of five individuals who are currently referred in the operative pleading as "John Doe #1" through "John Doe #5."[2] These individuals are Corrections Officer ("C.O.") Glenn Williams, C.O. Daniel Stewart, C.O. James Delpeschio, C.O. Michael White, and Lieutenant Darren Chevalier.

Where a party seeks to replace "John Doe" parties with named individuals, it must demonstrate that the substitution satisfies the "relation back of amendments" provision of Fed. R. Civ. P. 15(c). *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 468 (2d Cir. 1995) (citing *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)). Those requirements are that the conduct of the John Doe defendants "arose out of the conduct transaction or occurrence" discussed in the initial pleading (clearly satisfied here), and that the following requirements were fulfilled within 120 days after the initial complaint was filed: (i) "the party to be brought in . . . received such notice that it will not be prejudiced in maintaining its defense," and (ii) that party "knew or should have known

---

[2] Plaintiff states that the individuals identified as "John Doe 1" through "John Doe 4" in the Second Amended Complaint, are those individuals identified as "Corrections Officer John Doe #9" through "Corrections Officer John Doe #12" in the First Amended Complaint. Doc. 108, at 6. The individual now identified as "John Doe 5" was identified in the First Amended Complaint as "Lieutenant John Doe #5."

that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c).

*First*, the Court finds that the individuals Plaintiff aims to substitute for the John Doe defendants were on sufficient notice for purposes of Rule 15(c). Where a newly proffered state-official defendant will be represented by the same attorney as previously identified state-official defendants, notice to the earlier defendants can be imputed to the later defendants where "the attorney knew or should have known that the additional defendant would be added to the existing suit." *Byrd v. Abate*, 964 F. Supp. 140, 146 (S.D.N.Y. 1997). Here, defense counsel should have been aware of the identities of the John Doe defendants, given that they were identified with a fair amount of specificity in the amended complaint filed September 24, 2012. *See* Doc. 12 ¶¶ 24-27 (each of John Does #1-4 "is/was at all times relevant to this Complaint a CTDOC employee assigned to NCI as a Corrections Officer 'C.O.'"); ¶ 13 ("John Doe #5 is/was at all times relevant to this Complaint a CTDOC employee assigned to NCI with the rank of third shift commander designee-Lieutenant"); ¶¶ 111- 19 (alleging that John Does #1-4 "prepared individually [the] in cell restraint checklist" between April 23-26, 2010, made misleading reports about Plaintiff's behavior as part of a conspiracy with the Lieutenant Defendants, and knew such reports would lead to a continuation of in cell restraint status); ¶¶ 146, 149-50 (allegations about John Doe #5 and his activities specifically during the third shift hours on April 24-26, 2010). Accordingly, "as in *Byrd*, defense counsel knew of the roles of the 'Doe' defendants, and knew that the officers who were on duty at the times and places identified in the Complaint would be named as defendants in the suit," identities which "were 'uniquely accessible to [Defendants' counsel,]' who could have (and should have) consulted police department records and interviewed officers and other police department

employees." *Archibald v. City of Hartford*, 274 F.R.D. 371, 380 (D. Conn. 2011) (quoting *Byrd*, 964 F. Supp. at 146-47) (also determining that "counsel was aware that it would have to obtain that information," "within the 120 days after the [C]omplaint was filed"). Defendants' notice argument rings hollow.

*Second*, that Plaintiff's listing of the proposed defendants as "John Doe" was not a "mistake concerning the proper party's identity" does not preclude him from invoking Rule 15(c). At first glance, such would appear to be the necessary outcome of *Barrow*, in which the Second Circuit held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." 66 F.3d at 470. One could argue that here, like in *Barrow*, Plaintiff simply did not know the identities of the John Doe defendants, and thus his was not a "mistake" under Rule 15(c)(1)(C).

However, since *Barrow*, courts have fashioned an exception to this rule for situations such as the case at bar, in which the information as to the "John Doe" identities is particularly within the defendant's knowledge, the plaintiff has diligently attempted to ascertain those identities through discovery, and the plaintiff seeks to amend shortly after learning of those identities. *See Byrd*, 964 F. Supp. 140, 146 (permitting amendment replacing John Doe defendants to relate back pursuant to Rule 15(c) because the plaintiff's "circumstances are distinguishable from those presented in *Barrow*," in which the plaintiff "failed to make any efforts to obtain the identity of their names until well after the statute of limitations had run."). In *Byrd*, where the inmate-plaintiff "made a series of efforts to obtain the identity of the individual officer without prompting, and well before the end of the limitations period," and where the identity of John Doe was "uniquely within the knowledge of Corporation Counsel," the plaintiff was permitted to invoke Rule 15(c). *Id.* The *Byrd* court ended

6

its analysis by aptly pointing out the implications of a different holding: "To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended." *Id.*

This holds true here. In fact, so much so that it is almost an expression of temerity for the Defendants to argue that Plaintiff's request to substitute the John Doe defendants is improper. As an initial matter, just six weeks prior to his filing of the instant motion, this Court expressly permitted Plaintiff to refile his joinder motion "should the [John Doe] identities be revealed through discovery." Doc. 82, at 1 n.1. Further, the "discovery" referred to in that sentence was information that was being ordered to be produced within that ruling itself.

Moreover, it is clear that Plaintiff has been diligently attempting to gain discovery as to the John Doe defendants throughout this timely-filed litigation. Plaintiff, through the May 15, 2013 Initial Review Order, was told for the first time that failure to identify the John Doe defendants "may" lead to dismissal. Doc. 15, at 15.[3] On July 10, 2013, the Court then told Plaintiff that he needed to identify the John Doe defendants by July 24, 2013 or his claims against them would be dismissed. Doc. 27. However, Plaintiff quickly moved for reconsideration of that order, stating that the identities of the John Doe defendants is information that he "is not privilege to, and without the

---

[3] It is true that the three-year statute of limitations for Section 1983 claims expired between the filing of Plaintiff's complaint and the Court's Initial Review Order. Therefore, unlike in *Byrd*, Plaintiff here did not seek through discovery the identities of the John Doe defendants within the limitations period. However, that was not feasible. Pursuant to 28 U.S.C. § 1915A, Plaintiff's complaint could not have been served on Defendants, and therefore Defendants had not appeared in the case, until after the Initial Review Order was issued. Plaintiff cannot be expected to serve discovery on defendants who had yet to appear in the action, or who had yet to even be served with the complaint.

opportunity for discovery it is impossible for this pro se incarcerated plaintiff to obtain the information necessary to identify these defendants." Doc. 28, at 2-3 (pointing the Court to appropriate authority standing for the notion that plaintiffs are entitled to discovery to obtain information as to the identity of unknown parties). On November 7, 2013, the Court granted his reconsideration motion in full in light of his argument that the information as to the John Doe identities is within the knowledge of Defendants. Specifically, the Court stated that:

> Plaintiff has stated that he cannot ascertain the full names or identities of all aforementioned defendants without engaging in discovery. He is free to do exactly that – i.e., to attempt to ascertain the full names and identities of all aforementioned defendants – over the course of discovery as this litigation proceeds. If and when Plaintiff is successful in this respect, he may file a motion for leave to amend his Complaint, including claims against all defendants he is at that time able to identify. Any such motion to amend shall include information demonstrating that such claims are timely.

Doc. 35, at 3. Shortly thereafter, in January 5, 2014, Plaintiff propounded interrogatories and requests for admission as to the John Doe defendants, and, after receiving no response, filed a subsequent motion to compel as to same on April 17, 2014.[4] On August 4, 2014, he then served written interrogatories and requests for admission specifically targeted at information Defendants did have as to the identities of the John Doe defendants. *See Alston v. Pafumi*, No. 13-cv-00001, Doc. 21.[5] Plaintiff received no response to these requests nor to his September 25, 2014 letter offer to settle the discovery dispute, leading him to file yet another motion to compel on November 16,

---

[4] This motion to compel was denied because Plaintiff mistakenly sent discovery requests to the John Doe defendants to the named defendants who had already appeared. Doc. 63, at 2-3. However, his mistake is an understandable one, given his status as a *pro se* incarcerated plaintiff, and, regardless, it still demonstrates his diligence at learning the John Doe identities.

[5] As discussed *infra*, the Clerk inadvertently filed Plaintiff's November 16, 2014 motion to compel to the docket of the unrelated case cited in text.

2014. *Id.* Through no fault of his own, that motion was improperly docketed by the Clerk's office as part of a separate litigation, leading him to re-file the motion on March 23, 2015.[6] Doc. 69. The Court initially granted that motion on July 23, 2015 on the sole ground that Defendants waived their objections by not responding to the discovery requests. Doc. 82, at 24-26. However, on reconsideration, the Court reversed this decision in light of its determination that much of the correspondence between the parties may have been "undelivered communications." Doc. 84. The Court then ordered Defendants to respond to Plaintiff's discovery requests by August 24, 2015. *Id.*

*It was only then* that Plaintiff was finally able to receive the information for which he had been diligently searching, namely, the identities of the John Doe defendants. As Plaintiff now posits in his instant motion: "It was not until August 14, 2015, that the defendants finally complied with Plaintiff's August 9, 2014 discovery request providing information revealing the identities of John Doe #9-12 who became John Doe #1-4." Doc. 108, at 6. Plaintiff then quickly filed the instant motion to join the John Doe defendants three weeks after receipt of that discovery. A greater example of diligence on the part of an incarcerated *pro se* plaintiff cannot be envisioned. Plaintiff's motion is granted.

**D.   Motions to Serve Additional Interrogatories** [Docs. 96, 101, 110]

Generally, a party may serve up to 25 interrogatories on any other party. Fed. R. Civ. P. 33(a)(1). On September 9, 2015, Plaintiff moved for permission to serve an additional 10 interrogatories on each Defendant. Doc. 96. On September 21, 2015, Plaintiff filed a supplemental motion seeking leave to serve an additional 40 interrogatories on each Defendant, for a total of 65.

---

[6] Nor was Plaintiff silent between the filing of his incorrectly docketed motion on November 16, 2014 and the re-filing of the motion on March 23, 2015. On February 10, 2015, he filed a "Motion for Emergency Relief" seeking resolution of his motion to compel. Doc. 67.

Doc. 101. Defendants objected to that motion. Doc. 105. On October 1, 2015, Plaintiff filed another supplemental motion, which expressly withdrew his previous two motions to the extent they sought additional interrogatories as to all Defendants. Rather, his latest motion "limits his request to serve additional interrogatories upon Defendants Michael Pafumi and Richard Bellerose." Doc. 110, at 3-4. Plaintiff does not identify the precise number of interrogatories he aims to serve on Defendants Pafumi and Bellerose. Moreover, he failed to attach complete versions of the proposed interrogatories. *See*, *e.g.*, Doc. 110 Ex. 1 (missing even numbered pages). This failure requires the dismissal of Plaintiff's motion. As stated by Judge Bolden:

> Local court rules require that any motion filed under Rule 37 be accompanied by a memorandum containing "a concise statement of the nature of the case and a specific verbatim listing of each item of discovery sought or opposed, and immediately following each specification shall set forth the reason why the item should be allowed or disallowed. D. Conn. L. Civ. R. 37(b)1. In addition, copies of the discovery requests must be included as exhibits to the memorandum. *Id.* [Movant] has not complied with this requirement. . . . He does not attach copies of the requests to enable the Court to determine whether the requests seek relevant information.

*Ruffino v. Correctional Officer Harrell*, 2015 WL 9451028, at *2 (D. Conn. Dec. 23, 2015). Plaintiff's motion is denied without prejudice to refiling with the complete versions of the proposed interrogatories attached.

**E.    Motion to Modify Discovery Deadlines** [Doc. 97]; **Motions for Extension of Time to File Joint Trial Memorandum** [Docs. 111, 113]

On September 9, 2015, Plaintiff filed a motion seeking to extend the dates set by the Court in its scheduling order that it issued along with its earlier omnibus ruling. Doc. 97. Defendants opposed that motion. Doc. 106. On October 27, 2015, Defendants filed a motion to extend the date by which the parties must file the joint trial memorandum. Doc. 111. On November 2, 2015,

Plaintiff filed his own motion to extend the same date. Doc. 113. Each motion is denied as moot in light of the scheduling order the Court enters herewith. *See infra*.

**F.     Motions for Appointment of Counsel** [Docs. 112, 115, 117]

On June 11, 2015, Plaintiff initially moved for the appointment of pro bono counsel. Doc. 82. The Court denied that motion in its earlier omnibus ruling, which also ruled, *inter alia*, on Defendants' motion to dismiss claims against them in their individual capacities. Doc. 82. In that ruling, the Court stated the Second Circuit's relatively strict requirements for the appointment of pro bono counsel, including, but not limited to, that the movant's claim "'seems likely to be of substance.'" *Hodge*, 802 F.2d at 61. On that point, the Court ruled as follows:

> The Court is unable to conclude whether, at this relatively early stage, Plaintiff's position "seems likely to be of substance." . . . As this case has not progressed beyond the pleading stage, the Court cannot gauge the merits of Plaintiff's claims on the present record. Accordingly, Plaintiff's motion to appoint counsel will be denied without prejudice to his right to re-file that motion at a later stage of litigation.

Doc. 82, at 27.

Plaintiff accepted the Court's invitation and filed a second motion for appointment of counsel three months after the Court's earlier ruling. Doc. 112. Plaintiff's sole additional argument purporting to rectify the deficiency previously identified by the Court—that it is premature to assess the merits of Plaintiff's claim given the bare record before the Court—is that he will be entitled to an adverse inference regarding a video that was purportedly destroyed by the Defendants that documents the conduct at issue. Doc. 112-1, at 6-13. The argument thereby seemingly goes that because he will be entitled to an adverse inference, the chances of him succeeding at trial have increased. However, there is no spoliation motion before the Court and therefore Plaintiff's reliance

on a forthcoming ruling regarding an adverse inference is pure speculation.[7]  Plaintiff has therefore not proffered any record evidence in his present motion that was unavailable to the Court when it previously dismissed his motion as premature.  The Court therefore again denies Plaintiff's motion for appointment of pro bono counsel without prejudice to his right to re-file that motion at a later stage of litigation.

**G.     Motion to Compel** [Doc. 114]

Plaintiff moves to compel Defendants's production of documents responsive to his first requests for production.  Plaintiff served those requests on March 18, 2015.  Defendants did not respond or otherwise object to those requests by their April 17, 2015 deadline.  Rather, Defendants responded to Plaintiff's requests on September 11, 2015, and did so only after Plaintiff prodded them via written letter to respond.  *See* Doc. 114-1 Ex. 1 Ex. A.  In their untimely response, Defendants state numerous categorical objections to many of Plaintiff's document requests, ultimately leading to the instant motion to compel, filed on November 16, 2015.  Defendants elected to file no objection to the motion to compel until February 10, 2016, nearly three months after the motion was filed and more than two months after their response was due.

With respect to Plaintiff's earlier motion to compel, the Court stated the following, which applies equally to his present motion:

> It is well-settled that "'[a] failure to respond or object to a discovery request in a timely manner waives any objection which may have been available.'" *Cohalan v. Genie Indus., Inc.*, 276 F.R.D. 161, 163 (S.D.N.Y. 2001) (citing *UBS Int'l Inc. v. Itete Brasil Instalacoes*

---

[7] To the extent Plaintiff thought the language in his motion for appointment of counsel regarding Defendants' alleged spoliation could be viewed as a motion for spoliation sanctions, Plaintiff is mistaken.  The Plaintiff must specifically identify the relief he seeks in a motion before the Court such that his adversary is put on notice and has an opportunity to object.

*Telefonicas Ltd.*, No. 09 cv 4286 (LAK), 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24. 2010). *See Labarbera v. Absolute Trucking, Inc.*, No. 09 cv 4581 (DRH) (AKT), 2009 WL 2496463, at *1 (E.D.N.Y. Aug. 12, 2009) ("It is well established that by failing to respond or object to a discovery request in a timely manner, a party waives any objection which may have been available."); *Eldaghar v. City of New York Dep't of Citywide Admin. Servs.*, No. 02 cv 9151 (KMW) (HBP), 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) ("If a party fails to file timely objections to document requests, such a failure constitutes a waiver of any objections which a party might have to the requests . . . Any other result would . . . completely frustrate the time limits for discovery without any adverse consequences."). . . . Moreover, under our local rules, failure to submit a memorandum in opposition to a motion, including a motion to compel discovery, is independently sufficient grounds to grant the motion. *See* D. Conn. Loc. R. 7(a). . . .

Under Rule 37(a)(5)(A), if a motion to compel is granted the court "*must*, after giving an opportunity to be heard, require a party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," and the Court must *not* order such sanction if (among other reasons) the opponent's "non-disclosure . . . was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii) (emphasis added). While we acknowledge that as a *pro se* litigant, Plaintiff's "out of pocket expenses may be modest (probably merely duplication and mailing costs)," those expenses are nevertheless "recoverable as [a] discovery sanction." *Vincent v. House*, No. 07 cv 632A (HBS), 2009 WL 2913912, at *5 (W.D.N.Y. Sept. 4, 2009).

Here, Defendants served Plaintiff with their objections nearly *five months* after the deadline to respond had passed. Moreover, Defendants had an opportunity to explain their delay by timely objecting to Plaintiff's motion to compel, in which he argued that Defendants' objections are waived because they were untimely. They chose not to. The Court holds without difficulty that Defendants have waived any general objections to Plaintiff's requests for production of documents, served on

March 18, 2015. To hold otherwise would make a mockery of the Federal Rules.[8] That is not to say, however, that Defendants have waived specific objections as to specific documents or materials that it believes can be withheld or redacted. However, to do so it must follow the dictates of Fed. R. Civ. P. 26(b)(5) and "expressly make the claim" that the information within a specific document is not discoverable and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[9]

Plaintiff's motion to compel is granted. Plaintiff is directed, if he desires, to file an affidavit on or before February 26, 2016 documenting his costs and expenses, if any, in proffering to the Court his motion to compel. Defendants will have the opportunity to respond to that submission.

**H.    Motions for Sanctions** [Docs. 116, 118]

Both parties have cross-moved for sanctions. Defendants claim that Plaintiff purposefully misled the Court by stating in his motion to modify the scheduling order that he "was not entitled to free postage and envelopes and free writing paper because he was not deemed indigent" under

---

[8] In their tardy opposition to Plaintiff's motion to compel, Defendants make the hypocritical argument that Plaintiff's motion is in violation of the Federal Rules. Doc. 122, at 2 ("Plaintiff should not be allowed to circumvent the rules of discovery"). This statement is surprising as the Defendants have continually failed to adhere to the deadlines imposed by the Federal Rules, and have done so without ever justifying—or even addressing—the tardiness of their submissions.

[9] Defendants stated in their objections that although they object to producing certain documents, they will permit "plaintiff [to] make arrangements to review" them. *See, e.g.*, Doc. 114-1, at 1. Plaintiff argues, however, that "the Federal Rules of Civil Procedure provide for the production of documents not the mere review of documents." Doc. 114-1, at 15. Plaintiff is correct. Rule 34(a)(1) states that a "party may serve on any other party a request within the scope of Rule 26(b) . . . *to produce* and permit the requesting party or its representatives to inspect, copy, test, or sample [documents] in the responding party's possession, custody, or control." Defendants, again by failing to respond to the motion to compel, offer no authority offering an exception to this requirement.

Department of Correction rules. Doc. 116. Defendants contend this statement was misleading in light of Plaintiff's later submission to the Court that he received legal envelopes "as if I [he] was an indigent per policy standards." *Id*. In turn, Plaintiff's motion argues that Defendants misrepresented Plaintiff's spending in prison. Doc. 118. Neither party cites any authority supporting an award of sanctions. The Court assumes that the motions are filed pursuant to Fed. R. Civ. P. 11(b), which controls the imposition of sanctions for false or misleading representations to the Court.

Rule 11(b)(2) governs the procedure for the filing of a motion for sanctions. Relevant here, it states that a "motion for sanctions must be made separately from any other motion." *Id*. Both parties fail to comply with that directive. Defendants' is both a motion for sanctions as well as an opposition to Plaintiff's previously-filed discovery motion. Doc. 116, at 1 ("Defendants further object to plaintiff's September 7, 2015 Motion to Modify the Discovery Deadline, and move to seek sanctions against the plaintiff for misrepresentations he made to the court."). Plaintiff's error is precisely the same. *See* Doc. 118, at 1 (captioning his motion as "Plaintiff's Motion for Sanctions and Supplemental Response to Defendant's [107] Objection [to Plaintiff's Motion to Modify the Discovery Deadline]"). Both motions are thereby defective and are dismissed without prejudice. The parties should give some consideration as to whether re-filing is warranted in light of the Court's order below setting a revised case schedule.

**I.     Motion for Emergency Relief** [Doc. 121]

The plaintiff has filed a motion for emergency relief seeking a ruling on pending motions. In light of the instant ruling, the motion is denied as moot.

## II

Based on the foregoing, the Court makes the following Ruling and Order.

1. Plaintiff's Motion for Relief from Order [Doc. 86] is DENIED.

2. Plaintiff's Motion to Withdraw [Doc. 94] is GRANTED and his Motion for Courtesy Copy [Doc. 90] is thereby DENIED AS WITHDRAWN.

3. Plaintiff's Motion for Joinder of John Doe Defendants [Doc. 95] is GRANTED. The Clerk is directed to add C.O. Glenn Williams, C.O. Daniel Stewart, C.O. James Delpeschio, C.O. Michael White, and Lieutenant Darren Chevalier, respectively, as Defendants John Does ##1-5.

    a. The Clerk of Court is directed to verify the work address of the above identified individuals, which Plaintiff proffers as: State of Connecticut Department of Corrections, 24 Wolcott Hill Road, Wethersfield, CT 06109. The Clerk shall then mail to those Defendants a waiver of service of process request packet to each at the confirmed address within **ten (10) days** of this Ruling, and report to the Court the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d). Defendants Williams, Stewart, Delpeschio, White, and Chevalier are directed to appear and respond to the Second Amended Complaint within **sixty (60) days** from the date the waiver forms are mailed.

4. Plaintiff's third Motion to Serve Additional Interrogatories [Doc. 110] is DENIED WITHOUT PREJUDICE and his earlier Motions to Serve Additional Interrogatories [Docs. 96, 101] are DENIED AS WITHDRAWN.

5. Plaintiff's Motion to Modify Discovery Deadlines [Doc. 97], and both parties' Motions for Extension of Time to File Joint Trial Memorandum [Docs. 111, 113] are DENIED AS MOOT.

6. Plaintiff's Second Motion to Appoint Pro Bono Counsel [Doc. 112] is DENIED WITHOUT PREJUDICE. Plaintiff's Supplemental Motion to Appoint Pro Bono Counsel [Doc. 115] is DENIED AS IMPROPERLY FILED AS A SEPARATE MOTION, and his Motion for a Favorable Ruling [Doc. 117] is DENIED AS MOOT.

7. Plaintiff's Motion to Compel [Doc. 114] is GRANTED. Plaintiff is directed, if he so chooses, to submit an affidavit identifying his costs and expenses in bringing his

      motion to compel, if any, by **February 26, 2016**. Defendants will have **fourteen (14) days** to respond thereto.

8.     Both parties Motions for Sanctions [Docs. 116, 118] are DENIED WITHOUT PREJUDICE.

9.     Plaintiff's Motion for Emergency Relief [121] is DENIED AS MOOT.

10.    In light of the above rulings, the Court enters the following SCHEDULING ORDER:

    a.    **All Discovery Completed** — April 1, 2016

    b.    **Motions for Summary Judgment** — On or before May 2, 2016

    c.    **Trial Memoranda Due** — June 1, 2016 or 45 days from the Court's ruling on any summary judgment motion, whichever is later.

    d.    **Trial Ready Date** — July 1, 2016, or within 30 days after the filing of the trial memoranda, whichever is later.

All the foregoing is SO ORDERED.

Dated:   New Haven, Connecticut
           February 11, 2015

                                */s/ Charles S. Haight, Jr.*
                                CHARLES S. HAIGHT, JR.
                                Senior United States District Judge