# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IRA ALSTON, | |
| Plaintiff, | 3:15-CV-01672 (CSH) |
| v. | |
| JAMES DELPESCHIO, PAUL BALATKA, GREGIO ROBLES, HAFNER, ALICEA, LISA MOSIER, BLACK STOCK, JOHN DOE #1, *Second Shift Commander*, JOHN DOE #2, *Third Shift Commander*, JOHN DOE #3, *First Shift Commander*, and JANE DOE #1, *Nurse*, | **June 9, 2016** |
| Defendants. | |

## <u>INITIAL REVIEW ORDER</u>

<u>**HAIGHT,**</u> Senior District Judge:

*Pro se* Plaintiff Ira Alston, currently incarcerated at McDougall Walker Correctional Institution,[1] brings this civil rights action pursuant to 42 U.S.C. § 1983 against various employees of the state of Connecticut Department of Corrections ("DOC") (collectively "Defendants"). The Court, pursuant to 28 U.S.C. § 1915A, must undertake an initial review when a plaintiff requests to proceed *in forma pauperis* to determine whether the Complaint sets forth any claims upon which relief may be granted.

I.

---

[1]The Court takes judicial notice of the recent filing in another of Plaintiff Alston's cases, *Alston v. Chapdelaine*, no. 3:15-cv-434, noting that he has been moved from Northern Correctional Institution ("Northern") to McDougall Walker Correctional Institution. *See* Docket No. 72.

The Plaintiff alleges that on August 24, 2015, at Northern, Correctional Officers ("C.O.s") Loney and Madden inappropriately strip-searched him prior to him being released from his cell to make a collect telephone call.  Doc. 1, ¶ 1. The Plaintiff requested to speak to a lieutenant or to someone in the mental health department regarding the strip-search. *Id.* at ¶¶ 2–3.  The C.O.s refused to call a lieutenant. *Id.* at ¶ 3. The housing unit control officer then informed the Plaintiff that no one from the mental health department was at the facility at that time. *Id.* at ¶ 4. Plaintiff made a second request to speak to the lieutenant, but was again denied. *Id.* at ¶ 5.

The housing unit control officer subsequently followed up with Plaintiff because Defendant Nurse Balatka asked if the Plaintiff felt suicidal. *Id.* at ¶ 6. The Plaintiff indicated that he only wished to speak to someone in the mental health department or someone in the medical department, if mental health staff were not available. Doc. 1, ¶ 7. Nurse Balatka came to the Plaintiff's cell. *Id.* Plaintiff explained in detail the C.O.'s conduct during the strip-search. *Id.* at ¶ 8. Nurse Balatka then asked the Plaintiff if he wanted to file a Prison Rape Elimination Act report. *Id.* The Plaintiff indicated that he did. *Id.* Nurse Balatka then informed the Plaintiff that he would be placed on behavior observation status in a psychiatric isolation cell in the medical unit because staff had reported that he had said he wanted to commit suicide. *Id.* at ¶ 9. The Plaintiff denied making any statements of self-harm and asked to speak to a lieutenant.  *Id.* at ¶ 10. At that time, Nurse Balatka left the housing unit. Doc. 1, ¶ 11.

Thirty minutes later, Lieutenant Delpeschio and C.O.s Hafner and Alicea arrived at the Plaintiff's cell to escort him to the Facility Medical Unit. *Id.* at ¶ 12.  The Plaintiff questioned Lieutenant Delpeschio as to why he was being placed on behavior modification status and denied making any threats of self-harm.  *Id.* at ¶¶ 13–14. Lieutenant Delpeschio allegedly told Plaintiff that

he was being placed in a psychiatric isolation cell in the medical infirmary unit on behavioral observation status because of the Prison Rape Elimination Act report. *Id.* Once inside the isolation cell, Plaintiff was fully restrained with handcuffs behind his back, leg irons, and a tether chain between the two. *Id.* at ¶ 20. Then, Lieutenant Delpeschio allegedly deployed multiple bursts of a chemical agent into the Plaintiff's face unprovoked and without warning. *Id.* at ¶ 17.  Lieutenant Delpeschio then ordered Officers Hafner and Alicea to take the Plaintiff to the ground.  Doc. 1,  ¶ 18. The officers slammed the Plaintiff down to his knees and then pinned the plaintiff's torso on top of the bed in the cell. *Id.* Lieutenant Delpeschio continued to spray the Plaintiff with a chemical agent. *Id.*  Officer Alicea applied additional pressure to the Plaintiff's wrists which caused him to scream in agony. *Id.* at ¶ 21.  Lieutenant Delpeschio poured the remaining residue from the chemical agent canister into his hands and rubbed it into the Plaintiff's eyes and right ear.  *Id.* at ¶ 19.

The chemical agent caused the Plaintiff's head, face, eyes and ears to burn. *Id.* at ¶ 22.  Nurse Balatka used water-soaked gauze to wipe the Plaintiff's face, but it only intensified the burning and pain caused by the chemical agent. Doc. 1, ¶ 23. Nurse Balatka also sprayed a liquid into both of the Plaintiff's eye, but the liquid did not alleviate the pain or burning. *Id.* at ¶ 24. The Nurse offered no other treatment for the Plaintiff's injuries.  *Id.* at ¶ 25.

Lieutenant Delpeschio then ordered the plaintiff to be placed on in-cell restraint status in a different cell in the medical unit. *Id.* at ¶ 26. Officers applied the restraints tightly and the Plaintiff experienced pain in his wrists and ankles.  *Id.* at ¶ 27. Plaintiff remained in these restraints for more than eighteen hours. *Id.* Nurses Mosier and Balatka and Second Shift Commander John Doe #1 approved the in-cell restraint placement even though Plaintiff alleges that his behavior did not warrant such placement. Doc. 1, ¶¶ 29 -30.

3

On August 25, 2015, the Plaintiff asked Captain Robles to remove him from restraints and allow him to speak to medical personnel, but he refused to do so and told Plaintiff to "take his ass to sleep." *Id.* at ¶ 36. Plaintiff had further conversations with Defendants Nurse Jane Doe #1 and Lieutenant Blackstock concerning his discomfort after the application of the chemical agent. *Id.* at ¶¶ 37–38. Nurse Jane Doe #1 told Plaintiff to lay down and that the chemical agent would wear off. *Id.* at ¶ 38. Nurse Jane Doe #1, pursuant to Plaintiff's request, asked Lieutenant Blackstock to loosen the restraints, but he refused to do so. *Id.* at ¶¶ 39–40.

## II.

When a plaintiff moves to proceed *in forma pauperis,* the Court must conduct an initial review pursuant to 28 U.S.C. § 1915A to determine whether the Complaint sets forth any claims upon which relief may be granted. Section 1915, the very statute that authorizes a court to grant *in forma pauperis* status, protects against abuses of that privilege by specifying proper grounds for dismissal. Section 1915(e) thus mandates that the Court "shall dismiss the case at any time if the court determines that . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *see also* § 1915A (b)(1)-(2) ("Grounds for dismissal"); *Johnson v. U.K. Government*, No. 3:07-CV-106 (JCH), 2007 WL 4522458, at *1 (D. Conn. Dec. 18, 2007) ("When a plaintiff proceeds *in forma pauperis*, his lawsuit is subject to dismissal 'at any time if the court determines . . . that the action is frivolous or malicious,' 28 U.S.C. § 1915(e)(2)(B)(i), or if the court determines that the lawsuit 'fails to state a claim upon which relief may be granted.'") (citations omitted).

A complaint is "frivolous" under § 1915 if it "lacks an arguable basis either in law or in fact."

4

*See Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (an action is considered "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory'") (quoting *Neitzke*, 490 U.S. at 327)). In particular, "[a] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). A claim is thus factually frivolous "if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Id.* (internal citations and quotation marks omitted).

Furthermore, a claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law*, Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*), or a dispositive defense clearly exists on the face of the complaint, *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995). In reviewing a complaint to determine whether it states a viable claim, the court "accept[s] as true all factual allegations in the complaint" and draws inferences from these allegations in the light most favorable to the plaintiff. *Cruz* v. *Gomez,* 202 F.3d 593, 596 (2d Cir. 2000). Dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is then only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 597 (citation and internal quotation marks omitted). Section 1915(e) provides that "dismissal for failure to state a claim is mandatory." *Id.* at 596.

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

5

defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Twombly,* 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" is not facially plausible. *Id.* (*quoting Twombly*, 550 U.S. at 555, 557). Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).[2]

III.

The Court will analyze the § 1983 claims in the first instance to determine if they will go forward. "If any federal claim survives, the Court possesses 'federal question' subject matter jurisdiction, 28 U.S.C. § 1331, and will examine whether the supplemental state claims may proceed." *Alston v. Daniels*, 2015 WL 7257896, *4 (D. Conn., Nov. 17, 2015).

A.   Section 1983 Claims

Plaintiff asserts that the Defendants violated his federal rights under 42 U.S.C. § 1983 as their actions constituted a violation of the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment's protection of due process. Doc. 1, ¶¶ 41–45. Plaintiff generally asserts that the following conduct violates § 1983: (1) the use of a chemical agent without need or provocation; (2) the slamming of Plaintiff on the floor without need or provocation; (3) the failure to administer proper medical care; and (4) the approval of leaving Plaintiff on in-cell restraints for over eighteen hours. *Id.* The crux of claims one, two, and four are excessive use of

---

[2] The recitation of the standard for Initial Order Reviews is adapted from this Court's Order in *Alston v. Chapdelaine*, 2016 WL 543105, at *3–4 (D. Conn., February 10, 2016).

force. The third claim is a claim of indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments. The fourth and final claim also asserts a claim of a procedural due process violation under the Fourteenth Amendment. The Court will consider these in turn.

1. Excessive Use of Force

The Eighth Amendment protects against the infliction of "cruel and unusual punishment," which includes the "unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Additionally, the Eighth Amendment is the "primary source of substantive protection to convicted prisoners . . . , where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986).

While Plaintiff also asserts a Fourteenth Amendment claim, the Due Process Clause of that amendment protects pretrial detainees from excessive force. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). However, the protection for post-conviction detainees from excessive force derives from the Eighth Amendment. *Jeanty v. Cnty. of Orange*, 379 F.Supp.2d 533, 539 (S.D.N.Y. 2005). To the extent that Plaintiff asserts a substantive due process claim for excessive force, it must be dismissed. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment.").

In the Second Circuit, the use of a chemical agent or of extremely tight shackles on an inmate may constitute an excessive use of force in violation of the Eighth Amendment. *See, e.g., Tracy v. Freshwater,* 623 F.3d 90, 98 (2d Cir. 2010) (concluding that "a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force"); *Davidson v.*

7

*Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (holding material questions of fact remained with respect to excessive use of force where plaintiff was shackled so tightly as to cause severe pain and permanent injury); *Alston v. Daniels*, No. 3:15-CV-669 (CSH), 2015 WL 7257896, at *4 (D. Conn. Nov. 17, 2015) (holding that use of a chemical agent and tight shackles may, under certain circumstances, constitute an Eighth Amendment violation).

While not "every malevolent touch by a prison guard gives rise to a federal cause of action," if the conduct reflects an unnecessary and wanton infliction of pain, the Eighth Amendment is violated. *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). Furthermore, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically cause harm." *Id.* at 7.

In this case, plaintiff has alleged that although he never said to any correctional officer or medical professional that he was suicidal, he was put on in-cell restraints, which were very tight, slammed to the ground, and he was "maced" without provocation. Additionally, he alleges that the Lieutenant dumped the remaining chemical agent into his hands and rubbed it on Plaintiff's eyes and right ear. According to Plaintiff, he was not given sufficient treatment for the burning sensation resulting from the chemical agent and was left on in-cell restraint. This suggests, if true, that there was a malicious intent among the staff of the correctional facility. Under these circumstances, at the initial review stage, the complaint will proceed on the § 1983 claim pursuant to the Eighth Amendment.

2.      Deliberate Indifference to Prisoner's Serious Medical Need or Safety

The Eighth Amendment's prohibition on cruel and unusual punishment protects against deliberate indifference to a prisoner's serious medical needs by prison officials. *Estelle v. Gamble*,

8

429 U.S. 97, 104 (1976). To demonstrate deliberate indifference to medical needs, a plaintiff must allege sufficiently harmful acts or omissions to deny or delay unreasonably access to needed medical care or to wantonly cause infliction of unnecessary pain. *Id.* at 104–06.

However, mere negligence does not support a § 1983 claim. *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). Accordingly, not all failures by prison staff to provide medical care rise to the level of a constitutional violation. *Id.* Instead, to support a § 1983 claim, the complained-of conduct must "shock the conscience" or constitute a "barbarous act." *Klemonski v. Semple*, 2010 WL 2011142, *3 (D. Conn. May 19, 2010).

There are two aspects to the deliberate indifference standard: (1) the alleged deprivation must objectively be "sufficiently serious" enough to produce death, degeneration, or extreme pain; and (2) subjectively, the defendants must have been aware of a substantial risk that the inmate would suffer serious harm by defendant's act or omission. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

The injuries complained of by Plaintiff are the continued burning from the use of the chemical agent and the continued pain from the tight in-cell restraints. While the Court sympathizes with the Plaintiff's pain and discomfort, according to the law that binds this Court, this conduct does not rise to the level of a claim for deliberate indifference to a serious medical need. Plaintiff does not allege any continued injury or degeneration caused by his treatment. Objectively, the deprivation was not "sufficiently serious" to constitute deliberate indifference. Plaintiff also alleges that by leaving him on in cell restraints for over eighteen hours without need or penological justification constituted deliberate indifference to the Plaintiff's safety. The same standard applies. Plaintiff's treatment was

not sufficiently serious to recklessly endanger his safety. *See Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). Thus, Plaintiff's claims for deliberate indifference to a serious medical need or inmate safety is dismissed pursuant to 28 U.S.C. § 1915A.

        3.       Procedural Due Process

Plaintiff alleges that his placement on in-cell restraint status for over eighteen hours without need or penological justification constitutes a violation of procedural due process under the Fourteenth Amendment. In order to demonstrate a procedural due process violation, Plaintiff's "protected liberty interest" must be encroached upon. The Supreme Court has explained that "in the prison setting, liberty interests protected by Due Process will be 'limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Reynolds v. Murphy*, 2015 WL 1456880, *4 (D. Conn. Mar. 30, 2015) (*quoting Sandin v. Conner*, 515 U.S. 472, 485 (1995)). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that thirty days in punitive segregation did not present the type of atypical deprivation that would constitute a violation of the inmate's liberty interest. Likewise, Plaintiff's more than eighteen hour placement on in-cell restraints is not sufficient to meet the threshold. No liberty interest is implicated. Accordingly, the procedural due process claim is dismissed pursuant to 28 U.S.C. § 1915A.

        B.       Common Law Claims

        1.       Assault and Battery

Under Connecticut law, "assault" occurs when one intentionally places another in apprehension of bodily harm; and "battery" occurs when one intentionally causes harmful or offensive contact with another. *Alteiri v. Colasso*, 168 Conn. 329, 334 & n.3 (1975). "To prevail on

a claim for assault and battery, plaintiff must establish that a defendant applied force or violence to him and that the application of such force or violence was unlawful." *Odom v. Matteo,* 772 F. Supp. 2d 377, 395 (D. Conn. 2011) (*quoting Williams v. Lopes*, 64 F.Supp.2d 37, 47 (D.Conn.1999)); *see also Betancourt v. Slavin*, 676 F.Supp.2d 71, 80 (D.Conn. 2009).

Plaintiff, in this case, alleges that prison officials touched him in an offensive manner by spraying him and wiping his eyes and ears with a chemical agent and placing him in painfully tight restraints for an extended period of time. He has sufficiently stated a common law claim for assault and battery. See, e.g, *Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 WL 233994, at *9 (D.Conn. Jan. 25, 2012) (denying dismissal of Connecticut common law assault and battery claims of excessive force by police officers on summary judgment). Thus, these claims will be permitted to proceed under 28 U.S.C. 1915A.

2.     Intentional Infliction of Emotional Distress and Extreme Mental Anguish and Pain

The elements required under Connecticut common law to demonstrate intentional infliction of emotional distress are: (1) an actor intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the conduct caused plaintiff's distress; and (4) the plaintiff's emotional distress was severe. *Bell v. Bd. of Educ. of City of West Haven*, 55 Conn.App. 400, 409 (1999) (citations omitted). Liability for this tort "requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Id.* Construing the complaint liberally, plaintiff alleges that defendants acted in an intentional manner to cause him severe emotional distress when they sprayed his cell with a chemical agent and

11

tightly shackled him. These claims will be permitted to proceed under 28 U.S.C. 1915A.

      C.     Forms of Relief

          1.     Individuals in their Official Capacities

To the extent the Plaintiff seeks monetary damages against the Defendants in their official capacities as DOC employees and officials, the Eleventh Amendment bars any such claims. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). If a suit against a state official in his or her official capacity seeks money damages, the state is deemed the real party in interest, and is thus entitled to Eleventh Amendment immunity, as any damages awarded would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986). However, a Plaintiff may sue individual defendants for injunctive relief regarding actions undertaken in their official capacities. *See, e.g., In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law.")

          2.     Individuals in their Individual Capacities

A Plaintiff may sue individual Defendants under § 1983 for money damages. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). The Eleventh Amendment bar that applies when a plaintiff sues a defendant in their official capacity does not apply when the Defendant is sued in their individual capacity. *Id.*

          3.     Injunctive Relief

Plaintiff prays for "injunctive relief enjoining each Defendant from violating the Plaintiff (*sic*) rights as may be proving (*sic*) at trial." Plaintiff seeks, essentially, an injunction preventing the

officers from violating his rights in the same manner going forward. However, Plaintiff does not allege an actual case or controversy when praying for the injunctive relief of the type requested. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (finding no actual case or controversy warranting an injunction where class plaintiffs sued to enjoin police from using discriminatory enforcement of criminal laws going forward); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (finding no actual case or controversy warranting an injunction where plaintiff sued to enjoin police from using chokehold going forward after being subjected to a chokehold during a previous encounter with police). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea,* 414 U.S. at 495–96. Plaintiff's request for an injunction is dismissed pursuant to 28 U.S.C. § 1915A because it has no arguable legal merit.

IV.

In accordance with the foregoing review, the Court enters the following orders:

(1)     The allegations of deliberate indifference to a serious medical need or inmate safety contained in paragraphs 43–44 are **DISMISSED** pursuant to 28 U.S.C. § 1915A. The allegations of procedural due process violations in paragraph 44 are also **DISMISSED** pursuant to 28 U.S.C. § 1915A. The case will proceed on the remainder of the claim alleged in paragraph 44.

(2)     **The Clerk's Office** shall verify the current work addresses of each named Defendant (DelPeschio, Balatka, Robles, Hafner, Alicea, Mosier, and Blackstock) with the Department of Correction office of Legal Affairs and mail waiver of service of process request packets containing the amended complaint to each defendant at the

13

confirmed addresses within **fourteen (14) days** of this order. The Pro Se Prisoner Litigation Office shall report to the court on the status of those waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Pro Se Prisoner Litigation Office shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3)     **The Clerk's Office** shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the amended complaint on Defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **fourteen (14) days** from the date of this order and to file returns of service within **twenty (20) days** from the date of this order.

(4)     **The Clerk's Office** shall send written notice to the plaintiff of the status of this action, along with a copy of this Order.

(5)      **The Clerk's Office** shall send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(6)     The Defendants shall file their response to the Amended Complaint, either an answer or motion to dismiss, within **seventy (70) days** from the date of this order. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include any and all additional

defenses permitted by the Federal Rules.

(7)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **210 days** from the date of this order. Discovery requests need not be filed with the court.

(8)     All motions for summary judgment shall be filed within **240 days** from the date of this order.

(9)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10)    Service cannot be effected on Defendants John Does ##1–2 and Jane Doe #1 without their full names and current work addresses. Plaintiff is directed to file a notice identifying the full names and current work addresses for John Does ##1–2 and Jane Doe #1 within **thirty (30) days** from the date of this order. Any John or Jane Doe defendant not so identified may be dismissed from this case without further notice from the court.

The foregoing is SO ORDERED


Dated: New Haven, Connecticut
        June 9, 2016


                                            */s/ Charles S. Haight, Jr.*
                                            Charles S. Haight, Jr.
                                            Senior United States District Judge